United States Courts Southern
District of Texas
FILED

*October 24, 2023*

Nathan Ochsner, Clerk of Court

1  Alex Paul
   Attorney-in-Charge
2  SBN: 24134673, SDTXBN: 3849668
3  19 Moss Ave.
   Oakland, CA 94610
4  Telephone: (415) 298-1018
5  Email: alex@alexlegal.com

6  Attorney for Plaintiff, **Sung Jin Su**

7              **UNITED STATES DISTRICT COURT**

8              **SOUTHERN DISTRICT OF TEXAS**

9                    **HOUSTON DIVISION**

10 SUNG JIN SU,                        | Case No. 4:23-CV-03215

11              Plaintiff,             | jury

12     vs.                            | UNLIMITED CIVIL CASE

13 WORLD KUK SOOL                     | PLAINTIFF'S ==SECOND AM==ENDED
   ASSOCIATION, INC., a Texas         | VERIFIED COMPLAINT FOR:
14 corporation;

15 WKSA, LLC a Texas limited          |     1. BREACH OF CONTRACT;
   liability company; and
16                                    |     2. PROMISSORY ESTOPPEL;
   GAYA WON LLC, a Texas limited
17 liability company.                 |     3. WRONGFUL TERMINATION;

18              Defendants.           |     4. UNJUST ENRICHMENT;

19                                    |     5. DEFAMATION;

20                                    |     6. BREACH OF RIGHT OF
                                      |        PUBLICITY;
21                                    |     7. UNFAIR COMPETITION;
22                                    |     8. INTENTIONAL INFLICTION OF
23                                    |        EMOTIONAL DISTRESS
24                                    | **JURY TRIAL DEMANDED**
25
                         1
26 Case No. 4:23-CV-03215

27 SECOND AMENDED VERIFIED COMPLAINT FOR BREACH OF CONTRACT;
   PROMISSORY ESTOPPEL; WRONGFUL TERMINATION; DEFAMATION;
28 BREACH OF RIGHT OF PUBLICITY, UNFAIR COMPETITION; INTENTIONAL
   INFLICTION OF EMOTIONAL DISTRESS - DEMAND FOR JURY TRIAL

PLAINTIFF, by and through his attorney, Alex Paul, alleges as follows:

## THE PARTIES

1. Plaintiff is a resident of Oakland, County of Alameda, California. Plaintiff is a well-regarded martial artist who has dedicated his life to the study and practice of Korean-style martial arts.

2. Plaintiff is informed and believes and, on that basis, alleges that Defendant WORLD KUK SOOL ASSOCIATION, INC. is a corporation organized and existing under the laws of Texas with its principal place of business in Tomball, County of Harris, Texas; Defendant operates a franchise system of martial arts schools and/or conducts tournaments and seminars, including in San Francisco, California as well as throughout California.

3. Plaintiff is informed and believes and, on that basis, alleges that Defendant WKSA, LLC is a limited liability company formed under the laws of Texas and is a franchisor registered with the State of California's Department of Financial Protection & Innovation and operates an extensive franchise system of martial arts schools, including in San Francisco, California.

4. Defendant WKSA LLC requires that franchisees and their students be members of the WORLD KUK SOOL ASSOCIATION, INC. and order merchandise exclusively from GAYA WON LLC. *See* Ex. A (California Franchise Disclosure Document issued as of March 1, 2022 from the California Department of Financial Protection & Innovation.)

5. Plaintiff is informed and believes and, on that basis, alleges that Defendant GAYA WON LLC is a limited liability company formed under the laws of Texas and sells martial arts merchandise to California residents. Collectively,

2

Case No. 4:23-CV-03215

SECOND AMENDED VERIFIED COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY ESTOPPEL; WRONGFUL TERMINATION; DEFAMATION; BREACH OF RIGHT OF PUBLICITY, UNFAIR COMPETITION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS - DEMAND FOR JURY TRIAL

Defendants WORLD KUK SOOL ASSOCIATION, INC., WKSA, LLC, and GAYA WON LLC are referred to herein as "Defendants."

6. Plaintiff is informed and believes and, on that basis, alleges that Defendants are alter egos of their respective directors and officers. Defendants and their directors and officers have disregarded the separate corporate identities and formalities of the entities. They have commingled corporate assets and liabilities, failed to maintain arms' length relationships, and exercised complete domination and control over the entities. Adherence to the fiction of the corporate forms would promote injustice against Plaintiff and sanction fraud by the directors and officers.

7. Upon belief, the tortious acts and omissions alleged herein were performed by Defendants' management level employees or agents. Defendants allowed and/or condoned a continuing pattern of unlawful practices in violation of California and Texas law, and have caused, and will continue to cause, Plaintiff economic and non-economic damage in amounts to be proven at trial.

8. As a further proximate result of Defendants' unlawful and intentional actions, and the agents of each, against Plaintiff as alleged herein, Plaintiff has been harmed in that he suffered emotional pain, mental anguish, loss of enjoyment of life, and emotional distress.

9. Defendants committed these acts alleged herein maliciously, oppressively, and with the wrongful intention of injuring Plaintiff, and acted with an improper and evil motive amount to malice or despicable conduct. Alternatively, Defendants' wrongful conduct was carried out with a conscious disregard for Plaintiff's rights.

## **JURISDICTION AND VENUE**

Case No. 4:23-CV-03215

SECOND AMENDED VERIFIED COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY ESTOPPEL; WRONGFUL TERMINATION; DEFAMATION; BREACH OF RIGHT OF PUBLICITY, UNFAIR COMPETITION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS - DEMAND FOR JURY TRIAL

10. Jurisdiction is proper in the United States District Court for the Northern District of California because it has subject matter jurisdiction under 28 U.S.C. sec. 1332(a) due to diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeding $75,000, exclusive of interest and costs.

11. This Court has personal jurisdiction over Defendants because Defendants reside in or have their principal place of business in Texas and are Texas business entities.

## FACTUAL ALLEGATIONS

12. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

13. Defendants or its directors and officers have been doing business continually in San Francisco since the 1970s and have a substantial presence in California. *See* Ex. B.

14. Nearly 40 years ago, in March 1986, at the request of Defendants' directors and officers, Plaintiff relocated himself and his family to San Francisco, California from South Korea to work for Defendants and help build what would become what Defendants amount to today—a global, multi-million dollar company practicing and promoting traditional Korean martial arts.

15. After Plaintiff relocated his family from South Korea to San Francisco, California, Plaintiff and Defendants' director, In Hyuk Suh, unconditionally agreed that Plaintiff would be the next President and Director of Defendants' businesses and Defendants widely-publicized this in the martial arts community. *See* Ex. C.

16. Beginning on or around July 1995 and continuing throughout the years, Defendants re-affirmed, ratified, and widely publicized to the world that Plaintiff

Case No. 4:23-CV-03215

SECOND AMENDED VERIFIED COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY ESTOPPEL; WRONGFUL TERMINATION; DEFAMATION; BREACH OF RIGHT OF PUBLICITY, UNFAIR COMPETITION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS - DEMAND FOR JURY TRIAL

would be Defendants' next leader, including in magazine articles and Defendants' promotional materials, <u>documentaries</u>, in-person events, seminars, and tournaments. *See* Ex. C. for a myriad of supporting evidence, including declarations from high-ranking former school owners and instructors of Defendants' organization.

17. This succession plan benefitted Defendants' business because it showed that the business would continue into the "next generation," and it was widely known common knowledge within the Korean martial arts community.

18. Defendants, through its director or officer In Hyuk Suh, promised Plaintiff an ownership interest in all assets of Defendants, including real estate located at 20275 FM 2920 Tomball, Texas 77377 and real estate located at 37937 FM 1774, Magnolia, Texas 77355.

19. Plaintiff dutifully and faithfully practiced Korean-style martials arts, foregoing other opportunities, on the express unconditional promise of being the next leader of Defendants' business enterprise for the remainder of Plaintiff's life.

20. Plaintiff's dedication to Defendants' business and the respect he earned as a highly-skilled martial artist helped greatly enrich Defendants and expand their business reach.

21. Over the decades, working primarily in both California and Texas, but also globally, Plaintiff worked diligently and tirelessly to promote and expand Defendants' business.

22. For decades, Plaintiff travelled globally and worked tirelessly to expand Defendants' business reach such that Defendants advertised that they had millions of members in no less than sixty-eight countries. Defendants' officers and/or

5

agents have publicly stated that Defendants have a "record of every single person earning a black belt" and that for these members "there's a record of them learning Kuk Sool Won first." *See* Ex. D.

23. Upon information and belief, Defendants received a business valuation from Yumi Lee, a prominent Korean strategy and valuation expert, wherein Defendants were valued at over one billion U.S. dollars.

24. In 2021 and early 2022, Plaintiff began expressing serious concerns to In Hyuk Suh that Defendants, through its officers and directors, were engaging in possibly illegal or unethical conduct.

25. In particular, Plaintiff learned that Defendants were requiring schools to pay cash for all merchandise sales, seminars, and tournament fees and that this requirement to pay in cash was growing over time.  Furthermore, Plaintiff was learning that Defendants were requiring masters and school owners to pay black belt testing fees and seminars in cash, which one black belt testing fee can amount to several thousand dollars.

26. Plaintiff expressed concern that Defendants, through its officers, directors, or agents, transported or smuggled large amounts of cash from tournaments and seminars, including from the United Kingdom (requiring high-level UK masters, including Senior Master John Ives, to bring large amounts of cash from the UK to the US when these masters would come for tournaments, seminars, or the annual "CEP" or Continuing Education Program) as well as U.S. students accompanying Defendants to overseas tournaments and seminar wherein Defendants would have students return to the U.S. with large amounts of cash, and that Defendants were not declaring the revenue to tax authorities.

Case No. 4:23-CV-03215

SECOND AMENDED VERIFIED COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY ESTOPPEL; WRONGFUL TERMINATION; DEFAMATION; BREACH OF RIGHT OF PUBLICITY, UNFAIR COMPETITION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS - DEMAND FOR JURY TRIAL

27. Plaintiff expressed concerns that Defendants were not conducting full and complete background checks on all school owners and instructors and thereby putting children in danger.

28. In particular, Plaintiff was concerned because Defendants' officers and directors, in the past, had allowed a UK master, John Cockaday, to teach students until he was <u>convicted</u> of sexual abuse and sentenced to jail. A more recent example of lax background checks and vetting of instructors is that on August 21, 2023, a Kuk Sool Won instructor was charged with possession of child pornography. *See* Ex. E.

29. Plaintiff believed that the current UK instructors responsible for "safeguarding" were not doing their job—possibly allowing those with criminal backgrounds easy access to vulnerable children.

30. In particular, Plaintiff expressed concerns that Defendant's director and officer, Suk Hui Suh, was covering up sexual assault charges involving Alex Suh, a senior executive master, who oftentimes stayed in school owners' or students' houses and had access to young, vulnerable women. Plaintiff's concern about these actions was part of the basis for raising concerns about Defendants' unethical conduct, which ultimately contributed to Plaintiff's wrongful termination.

31. In early 2022, Plaintiff expressed grave concerns to Defendants' director, In Hyuk Suh, that one of Defendants' directors and officers, Alex Suh, appeared to have a "dark" and "three-sided personality," meaning that outwardly to some he displayed a kind and cheerful demeanor, but that, in reality, he had serious problems relating to a violent temper and sexual predation of young, vulnerable women.

7

Case No. 4:23-CV-03215

SECOND AMENDED VERIFIED COMPLAINT FOR BREACH OF CONTRACT;
PROMISSORY ESTOPPEL; WRONGFUL TERMINATION; DEFAMATION;
BREACH OF RIGHT OF PUBLICITY, UNFAIR COMPETITION; INTENTIONAL
INFLICTION OF EMOTIONAL DISTRESS - DEMAND FOR JURY TRIAL

32. In early 2022, Plaintiff expressed serious concerns to In Hyuk Suh that Defendants continued to promote a senior executive master, Alex Suh, who had declared bankruptcy and Defendants, through its agent and directors, "covered up" the "sexual predator" nature of this employee, including by paying large amounts of money to settle or force settlement of sexual assault cases involving Alex Suh or otherwise "make them go away."

33. Plaintiff also expressed concerns that Defendants continued to promote this senior executive master, Alex Suh, who was responsible for conducting background checks had been arrested for "assault bodily injury" with a judge requiring Alex Suh to enter an anger management treatment program, participate in a community service program, submit to random drug tests, not consume any alcohol, and complete a probationary period. *See* Ex. F. Since Plaintiff has filed its original claim, Plaintiff has located the victim who is willing to testify as to the grievous bodily injury Alex Suh inflicted upon him and, upon information and belief, Defendant's director and officer, Suk Hui Suh's, subsequent attempt to cover up and "make the matter go away" by offering him free martial arts lessons, of which he was not interested in.

34. After filing its original complaint and with further due diligence, Plaintiff has discovered that the reality is far worse than expected with repeated patterns of Alex Suh engaging in misconduct and the great lengths to which Suk Hui Suh and In Hyuk Suh would go to cover up the misconduct.

35. Upon further due diligence, Plaintiff's worst fears were confirmed: that Alex Suh repeatedly coerced his daughter's babysitter (Victim #2), who was barely 18 years of age, into having sex with him—even at times having sex with Victim

8

#2 while his then 11-year old daughter, Victoria Suh, slept in the same room. Victim #2 felt threatened by Alex Suh and she was scared because of how angry he got; he told her that "she had to learn to like this like he does and that he needs this from her and if he can't get it from her it will be from someone else." *See* Ex. G (the police report). Plaintiff's concern about these actions was part of the basis for raising concerns about Defendants' unethical conduct, which ultimately contributed to Plaintiff's wrongful termination. Since filing its original complaint, Plaintiff has located Victim #2 and she is willing to testify as to Alex Suh's character as well as how Defendants operate in a "cult-like" manner: a single leader who is the ultimate authority who claims to have special abilities or exclusive knowledge and who exerts total control using manipulation, coercion, or fear to maintain this control.

36. Defendants also encourage members to sever ties with those who are not a part of the group and they create an "us versus them" mentality with outsiders viewed as the enemy. The indoctrination, suppressions of dissent, elitism, etc. created an atmosphere wherein when Plaintiff raised concerns, he was expelled and then shunned.

37. Plaintiff further expressed concern that Defendants continued to promote a senior executive master, Alex Suh, who was disciplined multiple times by the Texas Board of Chiropractic Examiners for practicing without a license and that upon information and belief, Alex Suh had inappropriate sexual relationships with or sexual assaults of his students or patients. These concerns were also part of the basis for Plaintiff's objections to Defendants' conduct, which ultimately led to

9

Plaintiff's wrongful termination and Defendants' defamatory statements against Plaintiff.

38. Since filing its original complaint, Plaintiff has discovered that Plaintiff's concerns were founded in fact. *See* Ex. H (letter from the Texas Chiropractic College putting Alex Suh on indefinite administrative leave for a student's complaint of impropriety and noting that he failed "to cooperate in the investigation").

39. Upon information and belief, Alex Suh was then fired from his teaching position at the Texas Chiropractic College for attempted rape and sodomy of one of his students ("Victim #3"). *See* Ex. I. Plaintiff has now located Victim #3 who is willing to testify as to Alex Suh's character and the nature of Defendants' behavior. The information discovered after filing the original complaint further supports Plaintiff's allegations of Defendants' unethical and illegal conduct, which played a role in Plaintiff's claims.

40. Upon information and belief, Plaintiff believes that senior executive master, Alex Suh, has victimized additional students and patients.

41. Since filing Plaintiff's First Amended Complaint, Plaintiff has now discovered that Defendants' director and officer, In Hyuk Suh, attempted to cover-up of the sexual abuse of a young teenage minor by a Kuk Sool Won instructor. *See* Ex. J. The information discovered after filing the First Amended Complaint further supports Plaintiff's allegations of Defendants' unethical conduct at the highest level of the organization.

42. Alex Suh's misconduct and Defendants' efforts to cover up such misconduct, as well as Plaintiff's efforts to address these issues, serve as the

10

SECOND AMENDED VERIFIED COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY ESTOPPEL; WRONGFUL TERMINATION; DEFAMATION; BREACH OF RIGHT OF PUBLICITY, UNFAIR COMPETITION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS - DEMAND FOR JURY TRIAL

foundation for Plaintiff's claims of wrongful termination, defamation, and other damages in this complaint. Defendants' actions demonstrate a pattern of unethical and illegal conduct that directly affected Plaintiff and his relationship with Defendants.

43. After expressing his concerns to Defendants' director and officer, In Hyuk Suh, Plaintiff was not allowed to conduct an investigation or otherwise further explore the truth of the matters.

44. Instead, on or around February 2022, Defendants' director, In Hyuk Suh, told Plaintiff that he could leave Defendants' employment and "take any schools" with him that he "thought" he could take. This conversation was subsequently and basically memorialized by Defendants in a letter to all masters and school owners wherein Defendants state that Plaintiff may "reach out" and "invite them to join with him" and they are "free to make their own decisions and whatever choice suits them best." *See* Ex. K.

45. Surprised at the response, Plaintiff told In Hyuk Suh that he did not want to leave Defendants' employment, but that he wanted to make things better.

46. Defendants then suddenly terminated Plaintiff on March 10, 2022 without notice and without any meaningful income, severance or support, as a direct result of Plaintiff raising concerns about the unethical and illegal conduct of Defendants and their employees, specifically Alex Suh. The termination was communicated by emailing a letter to all of Defendants' masters and school owners.

47. Defendants stated that the reason for termination was merely that Plaintiff "has not made himself available for the various events hosted by the

Case No. 4:23-CV-03215

SECOND AMENDED VERIFIED COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY ESTOPPEL; WRONGFUL TERMINATION; DEFAMATION; BREACH OF RIGHT OF PUBLICITY, UNFAIR COMPETITION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS - DEMAND FOR JURY TRIAL

WKSA" and that Plaintiff "continues to work against the best interests of the WKSA." *See* Ex. K.

48. After Plaintiff filed his original complaint, Defendants' officer, Alex Suh sent a letter to all masters and school owners stating that "the Complaint is full of provably false claims…." *See* Ex. L.

49. After Plaintiff filed his First Amended Complaint wherein Plaintiff more fully-developed his Complaint with documentation of several sexual assault allegations by different women, Defendants' officer, Alex Suh, sent a subsequent letter to all school owners indicating that Plaintiff had not been made aware of the sexual assault allegations at the time. *See* Ex. M.

50. Thereafter, Defendants, through their officers or agents, publicly disparaged and ridiculed Plaintiff by stating that he was "disrespectful" and a "betrayer" among other things.

51. Mr. Gause is a high-ranking master and is currently promoted on Defendants' website and teaching Defendants' curriculum to others on behalf of Defendants. *See* Ex. N.

52. Mr. Gause posts on social media using his title ("Gjdkjn") from Defendants' organization and has stated publicly on social media that he has sole authority from "Kuk Sa Nym" [In Hyuk Suh] to approve or disapprove any Southern California school opening. *See* Ex. N.

53. Defendants, through its agents, Mr. Gause, also continued to disparage Plaintiff on social media by calling him a "LIAR"; "con"; "unethical"; "petty little bitch"; trouble-maker; "lowlife"; "Megolomaniac Man"; liar who "steal[s] money

from the unsuspecting and furthering his own egocentric agenda" among other things. *See* Ex. O.

54. Defendants, through Hilda Roper, Defendants' Compliance Officer, have been encouraging others to shun Plaintiff. *See* Ex. P (example of a typical email from Hilda Roper). If someone even "likes" a Facebook post related to Plaintiff, Hilda Roper springs into action to let that person know that Plaintiff is "working against" Defendants when, in fact, the reality is that Plaintiff always wanted Defendants to be a better organization and last for generations.

## **FIRST CAUSE OF ACTION**
### **(BREACH OF CONTRACT)**
### **(By Plaintiff Sung Jin Su Against Defendants)**

55. Plaintiff incorporates by this reference each and all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

56.  Pursuant to both California Civil Code §§ 1549-1662 and Texas Business and Commerce Code §§ 1.101-11.108, a valid contract was formed between Plaintiff and Defendants, in which Defendants offered Plaintiff an unconditional lifetime appointment to be the "next generation" or President and Director of its businesses. *See* Ex. C.

57. Defendants offered Plaintiff an equitable share of all assets, including but not limited to real estate located at 20275 FM 2920 Tomball, Texas 77377 and real estate located at 37937 FM 1774, Magnolia, Texas 77355.

58. Plaintiff accepted and faithfully performed his duties and responsibilities over the course of almost forty years. Plaintiff worked full-time for Kuk Sool Won

13

Defendants, performed all of his obligations during working hours, travelled to various states and countries as directed by Defendants for tournaments and seminars, and made himself available to be photographed for Defendants' promotional material and textbooks.

59. Defendants terminated Plaintiff's employment despite Plaintiff having fulfilled his duties under the contract. Plaintiff performed all his duties and responsibilities as directed by Defendants over the course of almost forty years and Defendants' director and officer, In Hyuk Suh, often expressed his approval of Plaintiff's work. However, the reason for Plaintiff's termination from employment was that he "has not made himself available for the various events hosted by the WKSA" and that the "situation has been addressed … on many different occasions." *See* Ex. K.

60. As a result of the egregious conduct of Defendants, Plaintiff has suffered lost wages, lost benefits, loss of reputation, etc. in an amount to be proven at trial.

## **SECOND CAUSE OF ACTION**

### **(PROMISSORY ESTOPPEL)**

### **(By Plaintiff Sung Jin Su Against Defendants)**

61. Plaintiff incorporates by this reference each and all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

62. Defendants made clear and unambiguous promises to Plaintiff, including but not limited to offering Plaintiff an unconditional lifetime appointment to be the "next generation" or President and Director of its businesses, and an equitable

14

share of all assets, including the specified real estate properties. Defendants declared and advertised Plaintiff's appointment as the "future leader of Kuk Sool." *See* Ex. C.

63. Defendants reasonably expected and intended that Plaintiff would rely on these promises. Defendants benefitted from Plaintiff's reliance because Plaintiff was loyal and worked hard to promote Defendants' business. Defendants expected Plaintiff to work hard in reliance on Defendants' promise and it was Defendants' intent to lead Plaintiff to act in reliance of the promise.

64. Plaintiff reasonably and foreseeably relied on Defendants' promises by accepting the offer, performing his duties and responsibilities, and making personal and professional decisions based on the promises made by Defendants.

65. Plaintiff's reliance on Defendants' promises was reasonable, foreseeable, and to his detriment. It is foreseeable that Plaintiff would work hard to promote and build Defendants' business and forego other opportunities if he believed that he had an ownership interest in it. Plaintiff is a well-regarded martial artist and Plaintiff allowed his name and likeness to be used without additional compensation to promote Defendants' business and Defendants' continued to use Plaintiff's name and likeness to advertise and grow the business.

66. Defendants failed to fulfill their promises, including but not limited to wrongfully terminating Plaintiff from his employment.

67. Because Plaintiff relied on Defendants' promises, he lost out on other career opportunities and suffered financial losses when the promise was broken,

Case No. 4:23-CV-03215

SECOND AMENDED VERIFIED COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY ESTOPPEL; WRONGFUL TERMINATION; DEFAMATION; BREACH OF RIGHT OF PUBLICITY, UNFAIR COMPETITION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS - DEMAND FOR JURY TRIAL

including the financial hardship due to the abrupt termination of employment and the loss of ownership interest in Defendants' business, assets, and real property.

68. Under the doctrine of promissory estoppel, as recognized under both California law, *see Kajima/Ray Wilson v. L.A. Cnty. Metro. Transp. Auth.*, 23 Cal.4th 305, 318-19 (2000), and Texas law, *see Wheeler v. White*, 398 S.W.2d 93, 96-97 (Tex. 1965), Defendants should be estopped from denying the existence, validity, and enforceability of their promises, and should be held liable to Plaintiff for the damages Plaintiff suffered in reliance and as a result of their breach.

## THIRD CAUSE OF ACTION
### (WRONGFUL TERMINATION)
### (By Plaintiff Sung Jin Su against Defendants)

70. Plaintiff incorporates by this reference each and all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

71. Plaintiff worked full-time for and at the direction of Defendants from 2008 until his termination on March 10, 2022, with Defendants' director and officer, In Hyuk Suh, often expressing his approval of Plaintiff's work.

72. Upon belief, Plaintiff was terminated for unlawful reasons, which include retaliation for complaining about Defendants' suspected illegal or unethical activity in violation of both California Labor Code sec. 1102.5 and the Texas Labor Code § 21.051.

73. As a result of the conduct of Defendants, Plaintiff has suffered damages in the form of lost wages, lost benefits, and emotional distress in the amount of $50,000,000 plus an award of attorneys' fees.

16

Case No. 4:23-CV-03215

SECOND AMENDED VERIFIED COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY ESTOPPEL; WRONGFUL TERMINATION; DEFAMATION; BREACH OF RIGHT OF PUBLICITY, UNFAIR COMPETITION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS - DEMAND FOR JURY TRIAL

74. Plaintiff is entitled to an award of attorneys' fees and costs incurred in pursuing this action, as provided under California and Texas law, as applicable.

## FOURTH CAUSE OF ACTION
### (UNJUST ENRICHMENT)
### (By Plaintiff Sung Jin Su against Defendants)

75. Plaintiff incorporates by this reference each and all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

76. Upon belief, Plaintiff was not fully compensated as an employee during his tenure with Defendants.

77. Plaintiff believes that Suk Hui Suh, one of Defendants' directors, used GAYA WON LLC to avoid certain financial and tax obligations, including fulfilling Plaintiff's employee tax responsibilities. *See, e.g.*, Ex. Q, (showing Plaintiff's tax records from 2018).

78. Despite Plaintiff's status as a full-time employee, fulfilling roles and responsibilities typically associated with such a position, a significant portion of Plaintiff's compensation was incorrectly classified as 1099 income. *See* Ex. Q.

79. Upon belief, Plaintiff was denied benefits such as health insurance, retirement contributions, and paid leave due to this misclassification.

80. Plaintiff had to pay self-employment taxes because he was misclassified as an independent contractor.

81. Plaintiff believes that Defendants benefitted or profited from the misclassification and were, therefore, unjustly enriched.

17

### FIFTH CAUSE OF ACTION

### (DEFAMATION)

### (By Plaintiff Sung Jin Su against Defendants)

82. Plaintiff incorporates by this reference each and all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

83. Defendants, through their authorized agents or representatives, including Alex Suh, stated falsely in front of a large audience of masters and school owners that Plaintiff's "way of doing martial arts was wrong," that Plaintiff did not make himself available for WKSA-hosted events, that he was "disrespectful," a "betrayer" and "did not bow" to In Hyuk Suh, the director of Defendants. Alex Suh, a high-ranking master with decades of experience, knew or should have known that Plaintiff has always incorporated or used recognized martial arts techniques; that Plaintiff always made himself available for WKSA-hosted events unless he was sick or traveling; and that Plaintiff has always showed the utmost respect for the directors and officers of Defendants' organization. Therefore, his statement that Plaintiff's martial arts were "wrong"; that he did not make himself available; and that refusing to bow, a factual occurrence, all asserted provable false facts rather than a protected opinion. *See* Ex. O.

84. Defendants published these defamatory statements to all masters and school owners as well as Defendants' students and the broader Korean martial arts community, which resulted in harm to Plaintiff's reputation and standing in the Korean martial arts community.

85. Defendants have used social media to spread hatred, contempt and ridicule of Plaintiff. For example, since filing its complaint, Mr. Gause has

Case No. 4:23-CV-03215

SECOND AMENDED VERIFIED COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY ESTOPPEL; WRONGFUL TERMINATION; DEFAMATION; BREACH OF RIGHT OF PUBLICITY, UNFAIR COMPETITION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS - DEMAND FOR JURY TRIAL

instituted an ongoing campaign of harassment and disparagement against Plaintiff on social media as well as telling others in the Korean martial arts community. Broadcasting to all Korean martial artists on social media, Mr. Gause referred to Plaintiff as a "Megolomaniac Man"; "unethical" "petty little bitch"; "lowlife"; "immature"; "pissy little bitch"; "entitled" promulgating "lies for stealing money from the unsuspecting and furthering his OWN egocentric agenda"; "Damn Liar and Con"; "rip-off artist"; and more. Furthermore, he encouraged others to show their "full disgust" against Plaintiff and that Plaintiff, by implication of this family dispute, needs "to be Put Down." *See* Ex. O.

86. Defendants knew that the statements were false and had no factual basis, but made them out of anger and ill-will toward Plaintiff. In the alternative, Defendants acted with reckless disregard for the truth. The statements were regarding events that did not occur or were misleading. For example, Plaintiff always bowed to In Hyuk Suh, the director of Defendants, to show his respect and Plaintiff never lied about the circumstances of his termination of employment or regarding the practice of martial arts.

87. As a result, Plaintiff was shunned by the Korean martial arts community and has suffered a loss of reputation, emotional distress, and economic losses in an amount to be proven at trial.

88. Plaintiff is entitled to an award of punitive damages against Defendants, as allowed under California Civil Code § 3294 and Texas Civil Practice and Remedies Code § 41.003, as applicable, due to Defendants' malice, oppression, or fraud in making these defamatory statements.

## SIXTH CAUSE OF ACTION

Case No. 4:23-CV-03215

SECOND AMENDED VERIFIED COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY ESTOPPEL; WRONGFUL TERMINATION; DEFAMATION; BREACH OF RIGHT OF PUBLICITY, UNFAIR COMPETITION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS - DEMAND FOR JURY TRIAL

**(BREACH OF RIGHT OF PUBLICITY)**

**(By Plaintiff Sung Jin Su against Defendants)**

89. Plaintiff incorporates by this reference each and all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

90. Shortly after terminating Plaintiff, Defendants required Plaintiff to remove all imagery, including historical or archival imagery, of Plaintiff's association with Defendants.

91. However, Defendants continue to commercially use Plaintiff's identity, including such historical or archival imagery, for commercial purposes, including in advertising, marketing, and promotion of its textbooks, books, and other teaching materials, without Plaintiff's consent.

92. On August 28, 2022, Plaintiff demanded, through Defendants' attorney, that Defendants immediately cease and desist using Plaintiff's likeness in its advertising materials, including textbooks, booklets, etc. and that any implied consent to use Plaintiff's likeness was expressly revoked.

93. Defendants willfully refused to stop using Plaintiff's likeness and continue to use Plaintiff's likeness in its teaching materials and upon belief are still using Plaintiff's likeness.

94. Defendants continued use of Plaintiff's likeness in its teaching materials is likely to cause confusion among consumers, such that consumers would think that Plaintiff continued to endorse or sponsor Defendants' products and services.

95. As a direct and proximate result of Defendants' unauthorized use of Plaintiff's likeness, Plaintiff has suffered damages, including economic losses and harm to his reputation, in an amount to be proven at trial.

96. Plaintiff is entitled to an award of punitive damages against Defendants, as allowed under California Civil Code § 3294 and Texas Civil Practice and Remedies Code § 41.003, as applicable, due to Defendants' malice, oppression, or fraud in using Plaintiff's likeness without his consent.

## SEVENTH CAUSE OF ACTION
## (UNFAIR COMPETITION)
### (By Plaintiff Sung Jin Su against Defendants)

97. Plaintiff incorporates by this reference each and all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

98. California Business & Professions Code section 17200 *et seq*. prohibits the engagement of any business acts or practices constituting unfair competition. Section 17200 defines "unfair competition" to mean and include "…any unlawful, unfair or fraudulent business act or practice." Texas Business & Commerce Code § 17.50 also provides remedies for deceptive trade practices.

99. Defendants have not provided all wages owed to Plaintiff in violation, *inter alia*, of California Labor Code sections 201, 204, 226, 226.7, and 510 and Texas Labor Code §§ 61.001-61.204 and have therefore engaged in unlawful business acts or practices in violation of Business and Professions Code section 17200 *et seq*. and Texas Business & Commerce Code § 17.50.

100. Defendants have made specific statements to the public claiming that they have "millions" of members, that they, alone, are "recognized" by the Korean government, that their martial arts are solely of Korean origin, and that

Case No. 4:23-CV-03215

SECOND AMENDED VERIFIED COMPLAINT FOR BREACH OF CONTRACT;
PROMISSORY ESTOPPEL; WRONGFUL TERMINATION; DEFAMATION;
BREACH OF RIGHT OF PUBLICITY, UNFAIR COMPETITION; INTENTIONAL
INFLICTION OF EMOTIONAL DISTRESS - DEMAND FOR JURY TRIAL

Defendants' director and officer, In Hyuk Suh, is a "16th generation martial artist" among other things when evidence suggests these statements are not at all accurate.

101. Defendants have publicly stated that they have "millions" of active members. *See* Ex. D (Defendants' advertising materials on its website).

102. Defendants list Korean schools on their website that do not exist in order to make the organization seem larger than it actually is. *See* Ex. R (a list of Defendants' Korean schools, a majority of which do not exist).

103. Defendants claim that their martial arts are solely of Korean origin, but Defendants' director and officer, In Hyuk Suh, copied from earlier Chinese styles of martial arts. *See* Ex. S.

104. Plaintiff is not aware of any official recognition or authorization from the Korean government regarding Defendants as the authorized Korean martial arts and, upon information and belief, no such evidence exists.

105. Defendants' origin story is a lie as he is not a sixteenth-generation martial artist; he wasn't trained by his grandfather; and the Defendants have never had millions of members. *See* Ex. T (the origin story as told by Defendants, Declaration from Jang Jin Mi, the ex-wife of In Hyuk Suh, the director; an account of the true history by Inseon Seo, President of Korean Hapkido Federation, and a photograph of In Hyuk Suh with his real instructor, Master Choi).

106. As a result of Defendant's unfair, deceptive, and fraudulent acts or practices, Plaintiff has lost sales of its own offering of Korean martial arts and has incurred costs to investigate and defend against Defendant's false and misleading statements.

Case No. 4:23-CV-03215

SECOND AMENDED VERIFIED COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY ESTOPPEL; WRONGFUL TERMINATION; DEFAMATION; BREACH OF RIGHT OF PUBLICITY, UNFAIR COMPETITION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS - DEMAND FOR JURY TRIAL

107. Defendants have publicly misrepresented facts about their membership numbers, origins, and leadership in a way that has misled consumers and disadvantaged competing martial arts businesses.

108. The harm to Plaintiff resulting from these unlawful and/or unfair business acts or practices, far outweighs whatever benefits, if any, such business practices have for Defendants.

109. In addition to all other damages properly recoverable, Plaintiff is entitled to all restitution damages arising from Defendants' unlawful and/or unfair business acts or practices, in an amount to be established according to proof plus interest.

110. Plaintiff is further entitled to cumulative damages pursuant to California Business and Professions Code § 17205, and an award of attorneys' fees pursuant to California Code of Civil Procedure § 1021.5.

## EIGHTH CAUSE OF ACTION

### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

### (By Plaintiff Sung Jin Su against Defendants)

111. Plaintiff incorporates by this reference each and all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

112. Defendants engaged in extreme and outrageous conduct by publicly terminating and ridiculing Plaintiff after Plaintiff's nearly four decades of service to Defendants.

113. Mr. Gause, Defendants' agent, engaged in extreme and outrageous conduct by lying about Plaintiff, using highly offensive language, and intending to

Case No. 4:23-CV-03215

SECOND AMENDED VERIFIED COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY ESTOPPEL; WRONGFUL TERMINATION; DEFAMATION; BREACH OF RIGHT OF PUBLICITY, UNFAIR COMPETITION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS - DEMAND FOR JURY TRIAL

cause serious reputational harm to Plaintiff by posting the statements on social media for the Korean martial arts community to see. Mr. Gause referred to Plaintiff as a "Megolomaniac Man"; "unethical" "petty little bitch"; "lowlife"; "immature"; "pissy little bitch"; "entitled" promulgating "lies for stealing money from the unsuspecting and furthering his OWN egocentric agenda"; "Damn Liar and Con"; and more. Furthermore, he encouraged others to show their "full disgust" against Plaintiff and that Plaintiff, by implication of this family dispute, needs "to be Put Down." *See* Ex. O.

114. Defendants acted with intent to cause Plaintiff emotional distress or, in the alternative, with reckless disregard for Plaintiff's emotional well-being.

115. Plaintiff suffered severe emotional distress as a result of the Defendants' conduct such that no reasonable person could be expected to endure it.

116. Defendants' conduct as alleged herein was extreme and outrageous.

117. Defendants intended to cause Plaintiff to suffer extreme emotional distress, and Plaintiff did suffer extreme emotional distress as a result of Defendants' actions.

118. As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff has sustained and continues to sustain substantial losses in earnings and other employment benefits and opportunities. Plaintiff has sought to mitigate these damages.

119. As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, loss of reputation, and mental and physical pain and anguish, all to his damage in a sum to be established according to proof.

**WHEREFORE**, Plaintiff Sung Jin Su prays for a judgment as follows:

Against Defendants:

1. For compensatory and general damages in an amount no less than $50,000,000;

2. For special damages, in an amount according to proof;

3. For mental and emotional distress damages;

4. For cumulative damages, pursuant to California Bus. & Prof. Code § 17205 and any applicable Texas law, to the extent allowed by law;

5. For punitive damages in an amount to be determined by the Court to make an example of and to punish Defendants, and to deter future similar misconduct;

6. That the corporate veil be pierced and the directors and officers be held personally liable and jointly and severally liable for any damages awarded against Defendants.

7. For an award of costs;

8. For an award of attorneys' fees under the applicable provisions of both California and Texas law;

9. For an award of interest, including prejudgment interest, at the legal rate as permitted by law;

10. For any and all other relief the Court deems just and proper.

## **REQUEST FOR JURY TRIAL**

Plaintiff Sung Jin Su hereby demands a trial by jury on all issues.

25

Case No. 4:23-CV-03215

SECOND AMENDED VERIFIED COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY ESTOPPEL; WRONGFUL TERMINATION; DEFAMATION; BREACH OF RIGHT OF PUBLICITY, UNFAIR COMPETITION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS - DEMAND FOR JURY TRIAL

Dated:  September 9, 2023

By: _____
ALEX P. PAUL, ESQ.
Attorney-in-Charge for Plaintiff
Sung Jin Su
SBN: 24134673
SDTXBN: 3849668
19 Moss Ave.
Oakland, CA 94610
Telephone: (415) 298-1018
Email: alex@alexlegal.com

26

Case No. 4:23-CV-03215

SECOND AMENDED VERIFIED COMPLAINT FOR BREACH OF CONTRACT;
PROMISSORY ESTOPPEL; WRONGFUL TERMINATION; DEFAMATION;
BREACH OF RIGHT OF PUBLICITY, UNFAIR COMPETITION; INTENTIONAL
INFLICTION OF EMOTIONAL DISTRESS - DEMAND FOR JURY TRIAL

## **VERIFICATION**

I have read the foregoing Complaint and know its contents. I am the Plaintiff, Sung Jin Su, a party to this action. The matters stated in the foregoing Complaint are true to my own knowledge, except as to the matters which are therein stated upon information or belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge and belief.

Executed at San Francisco, California, this 9th day of September, 2023.



SUNG JIN SU

27

Case No. 4:23-CV-03215

SECOND AMENDED VERIFIED COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY ESTOPPEL; WRONGFUL TERMINATION; DEFAMATION; BREACH OF RIGHT OF PUBLICITY, UNFAIR COMPETITION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS - DEMAND FOR JURY TRIAL