United States District Court
Southern District of Texas
**ENTERED**
December 23, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| Sung Jin Su, | § | |
| *Plaintiff/Counter-Defendant,* | § | |
| | § | |
| v. | § | Civil Action H-23-3215 |
| | § | |
| Gaya Won, LLC, | § | |
| World Kuk Sool Association, Inc, | § | |
| and WKSA, LLC, | § | |
| *Defendants/Counter-Plaintiffs/* | § | |
| *Third-Party Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | |
| Alex Paul and Chris Pak, | § | |
| *Third-Party Defendants.* | § | |

## MEMORANDUM AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). ECF No. 77. Several motions are pending before the court: Counter Defendant Sung Jin Su's (Su's) Motion to Dismiss, ECF No. 89; Su's Motion for Summary Judgment, ECF No. 105; Third-Party Defendant Chris Pak's (Pak's) Motion to Dismiss, ECF No. 90; Pak's Motion for Summary Judgment, ECF No. 104; Su's Motion to Strike, ECF No. 102; Defendants World Kuk Sool Association, Inc., WKSA, LLC, and Gaya Won LLC's Motion for Summary Judgment, ECF No. 109; Defendants' Motion to Strike Experts, ECF No. 110; and Su's Motion to Exclude Testimony, ECF No. 108.

The court recommends that: Su's Motion for Summary Judgment, ECF No. 105, be **GRANTED in part and DENIED in part**; Pak's Motion for Summary Judgment, ECF No. 104, be

**GRANTED**; Su and Pak's Motions to Dismiss, ECF Nos. 89 and 90, be **DENIED as MOOT**; Su's Motion to Strike, ECF No. 102, be **DENIED as MOOT**; Defendants' Motion for Summary Judgment, ECF No. 109, be **GRANTED in part and DENIED in part**; and Defendants' Motion to Strike Experts, ECF No. 110, and Su's Motion to Exclude Testimony, ECF No. 108, be **DENIED** without prejudice to refiling as motions in limine before the trial judge.

Accordingly, the court recommends that all claims by all parties be dismissed, except for Su's claim based on violation of his right of publicity and Defendants' counterclaim against Su for trademark infringement.

### 1. Background and Procedural Posture

This suit involves a family business dispute between father and son in the Korean martial arts field. Sung Jin Su filed suit in California state court against three companies that are run by his family: World Kuk Sool Association, Inc., WKSA, LLC, and Gaya Won LLC (collectively WKSA). ECF No. 55. The suit was removed to federal court and transferred to the Southern District of Texas. *See* ECF No. 39. Thereafter, WKSA brought counterclaims against Su and third-party claims against Chris Pak, who is a former WKSA franchisee and who is proceeding pro se, and Alex Paul, who is Su's lawyer and a former WKSA member. ECF No. 87. Su and Pak filed motions to dismiss and for summary judgment as to all WKSA's claims against them, and WKSA filed a motion for summary judgment on Su's claims against it. Paul's motions are the subject of a separate Memorandum & Recommendation in which the court recommends dismissal for lack of personal jurisdiction over Paul. ECF No. 138. Paul's motions are therefore not discussed herein.

Su's Second Amended Complaint states that WKSA runs a "multi-million dollar company practicing and prom[oting] traditional Korean martial arts." ECF No. 55 ¶ 12. According to

2

WKSA, World Kuk Sool Association, Inc. owns the intellectual property at issue in this case; WKSA, LLC is a franchisor that licenses franchisees to operate WKSA schools and use the WKSA name; and Gaya Won LLC sells KUK SOOL WON merchandise and services. WKSA's Third Am. Answer, ECF No. 87 at 2.

In-Hyuk Suh, Su's father, established WKSA decades ago, and In-Hyuk Suh leads WKSA today. Su states in his Second Amended Complaint that he moved to California from South Korea in 1986 to work for WKSA and help build the WKSA business. ECF No. 55, ¶ 14.

Su states that, for several decades, WKSA unconditionally agreed that Su would be the next President and Director of WKSA and that he would be WKSA's "next generation." Su's Second Am. Verified Compl., ECF No. 55 ¶ 15. According to Su, beginning in 1995 and continuing "throughout the years," WKSA publicized to the world that Su would be WKSA's next leader. *Id.* ¶ 16. Su also states that WKSA promised Su "an equitable share of all assets, including specific real estate [in Texas]." Su's Resp. to WKSA's M. Summ. J., ECF No. 117 at 3. In 2007, Su signed a document agreeing to perform specific duties on behalf of WKSA and to receive a set monthly salary in exchange for his services. ECF No. 109-1 at 146.

According to WKSA, Pak is a former WKSA franchisee who is now Su's assistant. *See* Roper Decl., ECF No. 118-1 at 2. Paul is an attorney who represents Su in this suit as well as a former WKSA black belt student. WKSA's Third Am. Answer, ECF No. 87 ¶ 61.

Su brings causes of action against WKSA for breach of contract, promissory estoppel, wrongful termination, unjust enrichment, intentional infliction of emotional distress, breach of his right of publicity, unfair competition, and defamation. ECF No. 55. Su's claims arise generally from his termination from

employment with WKSA in March 2022. The cause for Su's termination is disputed between the parties but is not directly material to the court's instant recommendations. After his termination, Su started a competing Korean martial arts business called Mirae Kuk Sool or United Mirae Kuk Sool. Pak now works with Su and no longer has a WKSA franchise.

Su also states in his Second Amended Complaint that WKSA wrongfully continued to use Su's identity and image for commercial purposes after his termination. ECF No. 55 ¶¶ 89–96. Su states that WKSA, through Su's brother Alex Suh, made false and offensive statements about Su. ECF No. 55 ¶ 83. Portions of this dispute also arise from the publication of details of this lawsuit in various letters and on social media to the Korean martial arts community.

WKSA's claims against Su and Pak arise generally from Su and Pak's alleged unlawful use of WKSA's intellectual property and trade secrets, and their alleged breaches of contract. WKSA brings claims for trademark and copyright infringement, cybersquatting, misappropriation of trade secrets, civil conspiracy, breach of contract, and tortious interference with an existing contract.

WKSA has published several textbooks. These books are all titled *Kuk Sool Won Textbook* with a corresponding volume number. Roper Decl., ECF No. 118-1 p. 2, ¶ 8. WKSA states that it had *Kuk Sool Won Textbook Volume 5* in production while Su was still employed by WKSA. But Su wrote his own *Kuk Sool Won Textbook Volume 5*, allegedly with Pak, while still employed by WKSA. Then, shortly after Su's termination, he "began marketing a book titled *Kuk Sool Won Textbook Volume 5*." *Id.* ¶ 7. It is unclear whether WKSA had published its Volume 5 textbook prior to Su's book's publication. In any event, WKSA alleges that the publication of Su's book violated WKSA's intellectual property

rights, and that Su and Pak's competing business is a breach of contract. The court provides additional relevant facts in the analysis below.

The court turns next to the pending motions but will first make a few prefatory comments about the briefing and evidence presented to the court. The parties have presented the court with hundreds of pages of briefing and argument. Neither side has been willing to concede a single point, even when it is clear to the court that there is no evidence or law in support of their position. The parties have objected to evidence, objected to the other side's filings, and have generally engaged in a highly contentious legal dispute.

That said, the court has read and carefully considered all the parties' filings. For reasons of judicial economy, however, the court has not addressed in writing every single argument that the parties have made. The court has addressed only those legal and factual issues that are relevant and material to the resolution of the pending motions. The parties should thus not assume that the court has failed to consider an argument that is not specifically discussed herein.

The court also notes that, while the parties have submitted voluminous briefing, that briefing does not cite much actual evidence. As will be discussed in Part 3, below, the court is not required to scour the record for evidence in favor of the parties' positions. The court has reviewed all the evidence the parties have cited but it appears that the parties have attached much more evidence than what they have cited in their papers. The fact that the parties have attached something to their briefing does not obligate the court to review it. It is the parties' duty to provide citations to the evidence and explain how the evidence supports their arguments. Accordingly, the court reminds the parties that

they should not complain later that the court did not consider evidence in the record that the parties did not bother to cite.

Finally, the court observes that, despite the length of the briefs, the parties have in many cases provided the court with little, if any, legal analysis. The parties often do not cite the elements of the causes of action they are attempting to pursue, do not state the factors that the court should consider in its analysis, and have left the court to do the research that the parties should have done themselves. Thus, while the court has endeavored to fully and fairly evaluate the parties' arguments, the parties should hesitate to fault the court for failing to consider cases, statutes, or legal theories that the parties did not bring to the court's attention.

### 2. *Motions to Strike*

Su and WKSA each filed motions to exclude the other party's experts. ECF Nos. 108, 110. The parties did not cite or otherwise rely on evidence from their experts in their motions for summary judgment, and therefore the court did not consider any expert testimony in its analysis. The court views the instant motions as motions in limine, which are best resolved by the trial judge. The motions to strike are therefore **DENIED** without prejudice to re-filing as a motion in limine before the trial judge in the context of the Final Joint Pretrial Order.

### 3. *Summary Judgment Legal Standard*

"Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmovant, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). No genuine issue of material fact exists if a rational jury could not find for the nonmoving party based on the complete record. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, "[t]he movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). If this burden is met, the nonmovant must then "go beyond the pleadings," using competent summary judgment evidence to cite "specific facts" showing a genuine issue for trial. *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

The court reviews all evidence and reasonable inferences in the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The court, however, does not have a duty "to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) ("Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports [the] claim."). Although the court needs to consider only the cited evidence, it is allowed to consider other materials in the summary judgment record. Fed. R. Civ. P. 56(c)(3).

"[C]onclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence'" are not enough to defeat a properly supported motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). "[T]here must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### 4. Analysis

#### A. Su and Pak's Motions

Su and Pak filed motions to dismiss WKSA's claims for failure to state a claim under Rule 12(b)(6). ECF Nos. 89, 90. Those motions were filed approximately three months prior to Su and Pak's motions for summary judgment. ECF Nos. 104, 105. The court carried the motions to dismiss with the motions for summary judgment, and the motions for summary judgment re-urge the same arguments as in the motions to dismiss. The motions to dismiss should therefore be **DENIED as MOOT**.

In response to Su and Pak's motions to dismiss, WKSA filed a sur-reply without leave of court. ECF No. 100. Su filed a motion to strike the sur-reply. ECF No. 102. Because the underlying motions to dismiss should be denied, the court has not considered the sur-reply, so the motion to strike the sur-reply, ECF No. 102, is **DENIED as MOOT**.[1]

#### i. Intellectual Property Claims: Counts I, II, III, V, and VI

WKSA brings claims of trademark infringement, contributory trademark infringement, copyright infringement, and misappropriation of trade secrets against Su and Pak. ECF No. 87. Su and Pak move for summary judgment on each claim against them and argue that there is no genuine issue of material fact because WKSA failed to identify evidence in the record supporting each of its claims. *See* ECF Nos. 105-1, 104-1.

In its response to Su and Pak's motions for summary judgment, WKSA addresses all the intellectual property claims

---

[1] In any event, the sur-reply is improper because it was filed without leave of court. *See United States Envtl. Services LLC v. Emergency Response & Training Sols., Inc.*, No. 4:18-CV-1031, 2018 WL 4334008 (S.D. Tex. July 17, 2018) ("a party must file a motion for leave before filing a sur-reply").

against Su and Pak together and in less than two pages of briefing. ECF No. 118 at 4, 6. WKSA's responsive argument cites to the record only once—it cites to the "Roper dec.," without any pinpoint citations, and does not attempt in any meaningful way to explain how the cited evidence supports its claims.[2] *See* ECF No. 118 at 6. Hilda Roper is WKSA's "Compliance Officer." Her declaration is eight pages followed by approximately twenty pages of attached exhibits. ECF No. 118-1. WKSA does not claim that Roper is an expert. WKSA does not cite any experts in support of its intellectual property claims. The court has considered the full Roper Declaration in its analysis herein.

### a. Trademark Infringement and Contributory Trademark Infringement

WKSA alleged trademark infringement under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a) against both Su and Pak. ECF No. 87 at 19. "To recover on a claim of trademark infringement, a plaintiff must first show that the mark is legally protectable and must then establish infringement by showing a likelihood of confusion." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008).

Trademark registration with the U.S. Patent and Trademark Office (USPTO) is prima facie evidence of the validity of a registered mark. *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 232 (5th Cir. 2009).

Showing a likelihood of confusion requires WKSA to prove that Su and Pak's use of WKSA's registered marks "is likely to cause confusion among consumers as to the source, affiliation, or

---

[2] *Cf. United States v. Delgado*, No. EP-13-CR-00370-DCG, 2020 WL 4353177, at *9 n.10 (W.D. Tex. July 29, 2020) ("[Defendant cites Exhibit 18] without any pincite or quoted excerpt therefrom; consequently, the Court is unable to determine exactly what material in the exhibit supports his proposition in the brief.").

sponsorship of [Defendant's] products or services." *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 483–84 (5th Cir. 2004), *abrogated in part on other grounds by Baker v. DeShong*, 821 F.3d 620 (5th Cir. 2016); *see also Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting *Springboards to Educ., Inc. v. Houston Indep. Sch. Dist.*, 912 F.3d 805, 811–12 (5th Cir. 2019) [hereinafter *Springboards I*]). To prevail, the plaintiff ultimately must demonstrate a probability, not a mere possibility, of likelihood of confusion between the marks as to source, affiliation, or sponsorship. *Xtreme Lashes, LLC*, 576 F.3d at 226; *see also Nola Spice Designs, L.L.C. v. Haydel Enters.*, 783 F.3d 527, 536 (5th Cir. 2015).

The Fifth Circuit directs courts to consider the following nonexclusive list of factors known as the "digits of confusion" to decide whether the alleged use of a mark was confusing:

> (1) the type of trademark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, (7) any evidence of actual confusion, and (8) the degree of care exercised by potential purchasers.[3]

*Springboards I*, 912 F.3d at 812 (quoting *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 453 (5th Cir. 2017)). "No one factor is dispositive, and a finding of a likelihood of confusion does not even require a positive finding on a majority of these 'digits of confusion.'" *RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 697 (S.D. Tex. 2009) (quoting *Elvis Presley Enters. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998)).

---

[3] The parties did not address the digits of confusion at all.

Rather, the court must assess each digit individually and then weigh them as a whole to determine whether there is a likelihood of confusion. *RE/MAX Int'l, Inc.*, 655 F. Supp. 2d at 697.

The digits are analyzed on a case-by-case basis according to the facts and circumstances presented. *Future Proof Brands, L.L.C. v. Molson Coors Beverage Co.*, 982 F.3d 280, 289 (5th Cir. 2020). "[L]ikelihood of confusion is typically a question of fact" although "summary judgment is proper if the 'record compels the conclusion that the movant is entitled to judgment as a matter of law.'" *Xtreme Lashes, LLC*, 576 F.3d at 227 (quoting *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 474 (5th Cir. 2008)).

WKSA provides evidence of its registered marks in Roper's Declaration. ECF No. 118-1 p. 3, ¶ 9. Roper declares that WKSA has registered, among others, a word mark for "KUK SOOL WON." *Id.* ¶ 9(a). She also declares that "KUK SOOL WON and KUK SOOL are trademarks of the World Kuk Sool Association, Inc." *Id.* ¶ 11. Thus, WKSA has presented evidence that it owns valid trademarks. Su does not dispute this, except in a single paragraph of his motion for summary judgment Su argues that "KUK SOOL WON" is a generic term and thus not entitled to trademark protection. ECF No. 105-1 at 15. Su supports this argument by incorporating by reference a Motion for Summary Judgment that he filed with the USPTO and attached as an exhibit to a declaration attached to his motion. He "requests that this Court review the motion submitted to the USPTO and rule that the mark, KUK SOOL WON, is generic." ECF No. 105-1. Su did not present the court with any responsive briefing that the court presumes was filed with the USPTO, and did not make any of the arguments before this court that he made before the USPTO.

Su's request is highly irregular. He asks this court to review and rule on an eighty-page document that was filed as a motion

before an administrative agency. The attached briefing appears to be incomplete, and the issue has not been briefed *at all* before this court. Even if the issue were properly before this court, whether a mark is generic is not generally decided at the summary judgment stage. If a mark is generic, a court may cancel the mark's registration with the USPTO. *Xtreme Lashes, LLC*, 576 F.3d at 232. But because categorization of a mark as generic is a question of fact, summary judgment is rarely appropriate. *Id.* Moreover, the court sees cancellation of a registered mark as a highly consequential undertaking. Su is asking the court in effect to divest KSWA of what appears to be a central part of its intellectual property portfolio. The court would think that such a request would be properly presented to the court in a motion for summary judgment, not presented as an afterthought and incorporated by reference to incomplete briefing before an administrative agency. Because the relief requested has extreme consequences, because it has not been properly presented to the court, and because the issue is a fact-intensive one, the court will not accept Su's invitation to declare the mark generic.

The question then becomes whether Su's and Pak's use of WKSA's marks is likely to cause confusion. Su argues that there is no evidence that his use of WKSA's mark is likely to cause confusion.

WKSA relies exclusively on Roper's declaration to raise a fact issue about the likelihood of confusion. While the evidence is not overwhelming, it is sufficient to create a fact issue on likelihood of confusion. Roper states in her declaration that Su markets the "*Kuk Sool Won Textbook Volume 5*." Roper Dec., ECF No. 118-1 at 2 ¶ 8. Roper also avers that Su has created a competing organization called "the Mirae Kuk Sool/United Mirae Kuk Sool." *Id.* ¶ 5. She explains that WKSA's trademarks include the WKSA logo, which appears on all of WKSA's uniforms, and that Su's book

12

features him wearing the WKSA uniform with "all the trademarked logos and words." *Id.* at 4 ¶ 10. According to Roper, since Su and Pak "have been infringing on the Association's trademarks, they have caused confusion over the KUK SOOL WON, as demonstrated by social media posts of potential students." *Id.* In support of that claim, Roper's declaration includes a screenshot of a Facebook post with a YouTube link. ECF No. 118-1 at 19. Below the YouTube link is a comment stating "So, stupid question is all of kuk sool won schools going under united mirae kuk sool?" *Id.* The comment was posted in response to a video titled "Mirae Kuk Sool Introduction" with the description "Introducing Master Sung Jin Suh." *Id.* Also according to Roper, WKSA's *Volume 5* textbook is not publicly available and only Master Instructors over the rank of 7th Degree Black Belt can purchase it. *Id.* p. 2–3, ¶ 8.

The evidence weighs in favor of WKSA on multiple digits of confusion: the type of trademark allegedly infringed is a wordmark for "KUK SOOL WON;" Su is using exactly that phrase in the title of his textbook, and part of that phrase in the name of his new organization. The products being offered are the same as WKSA's—Korean martial arts instruction. Arguably, Su's long history with WKSA could show Su's intent to infringe by publishing a book with the same title as WKSA's books after his termination.

At least one digit of confusion could weigh in favor of Su. The fact that WKSA's *Volume 5* book is meant only for high-ranking WKSA black belt members could mean that the purchasers would exercise a high degree of care in purchasing products. Su's creation of the book prior to his termination does not change the analysis, and the lack of evidence showing actual confusion is not dispositive.

Su's burden on summary judgment with respect to the likelihood of confusion is to show that the record compels the conclusion that no genuine issue of material fact exists as to a probable likelihood of confusion. *See Xtreme Lashes, LLC*, 576 F.3d at 227 (quoting *Smack Apparel Co.*, 550 F.3d at 474). While WKSA could have done a much better job briefing the issue, Roper's declaration is sufficient to raise a genuine issue of material fact on whether Su's use of WKSA's marks is likely to cause consumer confusion. The record in this case does not compel the conclusion that there is no likelihood of confusion. Thus, a jury must decide. Su's motion for summary judgment should be denied on WKSA's trademark infringement claim against him.

Pak also moved for summary judgment on WKSA's trademark infringement claim. Although Pak does not specifically move for summary judgment on WKSA's contributory infringement claim, Pak is proceeding pro se and the court will liberally construe his motion. Because Pak seeks summary judgment on all claims against him, and because he has specifically argued that he is not liable for trademark infringement, the court interprets his motion as seeking summary judgment on both trademark infringement and contributory trademark infringement. *See* Pak's M. Summ. J., ECF No. 104-1 at 2.

A defendant can be secondarily liable for contributory infringement if there is underlying infringement by another. *Phoenix Ent. Partners LLC v. Boyte*, 247 F. Supp. 3d 791, 797 (S.D. Tex. 2017) (citing *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1240 (10th Cir. 2013)). Contributory infringement is "intentionally causing or knowingly facilitating the infringement of the plaintiff's mark by a third party." *Id.*

Pak argues that there is no evidence he has used any of WKSA's marks in commerce or that he created any likelihood of

confusion. ECF No. 104-1 at 4. He declared that he has never infringed any WKSA trademarks. ECF No. 104-2 at 2. In its response to Pak's motion for summary judgment, WKSA does not even mention the concept of contributory infringement. In a part of their brief not relating to the intellectual property claims, ECF No. 118 at 3, WKSA cites a portion of Pak's deposition wherein he admits to helping Su write the textbook, but he says he did that in early 2020, ECF No. 118-2 at 6–8, which the court understands to be during the time when Su still worked for WKSA. It is unclear to the court how Pak's contribution to the textbook at that time could constitute either trademark infringement or contributory trademark infringement. WKSA has not made any arguments to assist the court in understanding its position.

WKSA also cites the Roper Declaration, in which she states that *Su* markets the textbook and that Pak is Su's assistant. ECF No. 118-1 p. 2, ¶ 7. She does not say that *Pak* participates in marketing the textbook. WKSA does not explain how Pak acting as Su's assistant makes him liable for trademark infringement.

Although not discussed at all by WKSA, the court notes that Roper's declaration includes text messages showing that Pak wrote to a few people, apparently potential customers, discussing the new martial arts organization. ECF No. 118-1 at 9–14. Absent any argument about the meaning or import of these messages, the court is uncertain whether WKSA believes these messages are probative of Pak's liability. The court notes that the messages all make clear that Pak is discussing a *new* organization—one that is separate from and perhaps a better option than WKSA. The messages are being sent to what appear to be potential franchisees, thus arguably somewhat sophisticated consumers. Both of these things suggest that Pak's messages may not have been likely to confuse their recipients. Because WKSA has not explained how the facts support their legal theory, the court

concludes that WKSA has failed to show that there is a genuine issue of material fact. The evidence does not show that Pak has used WKSA's marks in a manner that would be likely to cause confusion. Summary judgment should be granted against WKSA on its trademark claims against Pak.

### b. Copyright Infringement

"[A] claim for copyright infringement has three elements: '(1) ownership of a valid copyright; (2) factual copying; and (3) substantial similarity.'" *Batiste v. Lewis*, 976 F.3d 493, 502 (5th Cir. 2020) (quoting *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007)). To show factual copying, absent direct evidence of copying, a plaintiff can show "(1) proof that the defendant had access to the copyrighted work prior to creation of the infringing work and (2) probative similarity." *Batiste*, 976 F.3d at 502. Not all factual copying is copyright infringement. *Id.* If the plaintiff shows factual copying, the plaintiff must then show that the infringing work is substantially similar to the protectable elements of the infringed work, which usually requires a side-by-side comparison of the protectable elements of the works. *Id.*

Ownership of a valid copyright is shown by compliance with statutory formalities, like registration, and proof of originality and copyrightability of the work as a whole. *Batiste*, 976 F.3d at 501. WKSA provides evidence that it has registered copyrights for "various textbooks, handbooks, and other materials." ECF No. 118-1 at p. 3, ¶ 9.

Su and Pak do not dispute the validity of WKSA's copyrights but argue that WKSA has not identified any specific copyrighted works that they infringed. ECF No. 104-1 at 5; ECF No. 105-1 at 16. In response, WKSA states that it has a copyright registration for "*Kuk Sool Won Textbook Volume 5*" and that WKSA "provided a list of copyrighted works registered with the U.S. Copyright

Office that they were infringed, along with the registration numbers for each work." ECF No. 118 at 4.

Leaving the textbook to the side for the moment, WKSA's arguments are entirely conclusory and unsupported by the evidence. WKSA has not even attempted to describe its listed copyrighted works aside from listing their registration numbers and the titles of its textbooks. WKSA has not presented any evidence that Su or Pak infringed any of the listed works. There is no evidence in the record that Su or Pak made any unlawful use of any of WKSA's copyrighted works. There is no evidence, for example, that Su or Pak copied, distributed, or displayed any particular copyrighted work that WKSA owns. *See* 17 U.S.C. § 106 (listing an author's exclusive rights in a copyrighted work). The court has not been presented with evidence of the copyrighted works or evidence of Su and Paul's infringing works. There is no evidence from which the court could possibly determine that infringement has taken place.

The court turns to the textbook. WKSA argues that, by creating a book with the exact same *name* as their textbook, Su and Pak infringed on its copyright registration for the "*Kuk Sool Won Textbook Volume 5*" book. ECF No. 118 at 4, 6. It appears that WKSA is conflating trademark protection, which, as discussed above would apply to the book's title, with copyright protection, which would not. Titles of books are not entitled to copyright protection. *See* 37 C.F.R. § 202.1 (giving examples of works not subject to copyright and excluding from protection "[w]ords and short phrases such as names, titles, and slogans"); *Macher v. Netflix, Inc.*, 684 F.Supp.3d 509, 515 (W.D. Va. 2023) (citing 37 C.F.R. § 202.1 and explaining that it is "well-settled" that titles are not copyrightable). WKSA alleges that Su is distributing a textbook of his own with the same title as theirs. It does not appear that WKSA is alleging that Su has actually copied WKSA's

textbook. To the extent that WKSA does take the position that Su and Pak copied their textbook, they have not presented evidence of that. Again, the court does not have any part of WKSA's textbook or any part of Su's textbook. There is no way for the court to compare the two, and there are no experts or witnesses saying that they have compared the two and found any similarity. There is no evidence of copyright infringement.

The court recommends that Su and Pak's motions be granted on the copyright infringement claim.

### c. Misappropriation of Trade Secrets

Because claims for trade secret misappropriation under the Defend Trade Secrets Act (DTSA) and Texas Uniform Trade Secrets Act (TUTSA) require proof of similar elements (other than the interstate commerce element required for the federal statute, which is not at issue here), courts generally analyze them together. *See, e.g.*, *M-I L.L.C. v. Q'Max Sols., Inc.*, No. H-18-1099, 2019 WL 3565104, at *3 (S.D. Tex. Aug. 6, 2019). The DTSA's statutory language is virtually identical to TUTSA's. The parties have not argued that DTSA and TUTSA require different elements of proof.

To prevail on a cause of action under either statute, WKSA must prove: (1) the existence of a trade secret; (2) that was acquired through the breach of a confidential relationship or through improper means; (3) which Su or Pak used without WKSA's permission. *GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 325 (5th Cir. 2018). The statutes phrase the cause of action to require only two elements: (1) the existence of a trade secret; and (2) misappropriation. 18 U.S.C. § 1836(b)(1); Tex. Civ. Prac. & Rem. Code § 134A.004(a).

"Trade secret" is defined by DTSA to mean:

all forms and types of financial, business, scientific, technical, economic, or engineering information . . . if . . . the owner [of the trade secret] has taken reasonable

measures to keep [the] information secret[] and . . . the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3).

WKSA argues that Su had access to WKSA's email lists, which "are confidential trade secrets that have been used [by] the co-conspirators to solicit schools to leave KSW and have been used to disseminate unfounded allegations against KSW." ECF No. 118 at 4. Roper declares that "email addresses are not accessible by members or other school owners." ECF No. 118-1 at p. 5 ¶ 12. WKSA has not provided any evidence that it has taken reasonable measures to keep the email lists secret or that the information derives independent economic value from not being generally known. This is fatal to WKSA's claim. Because WKSA has not provided evidence of a trade secret under DTSA or TUTSA, its claims for misappropriation fail. The court also notes that Roper's declaration does not specify how Su obtained the email lists through improper means. The declaration also lacks any specifics on how Su or Pak improperly used the email lists. Roper states only that "Since Sung Jin Su was terminated these emails lists have been used by Sung Jin Su and Chris Pak's *co-conspirators* to harm KSW by sending extensive mass messaging to all KSW members and school owners . . . containing unsubstantiated allegations." ECF No. 118-1 at 5–6 ¶ 12 (emphasis added). The court is left to wonder how the "co-conspirators" obtained the email lists, and whether Su or Pak had anything to do with the alleged improper use. WKSA appears to believe that the court can just assume that Su or Pak improperly provided the email lists to others, without any evidence of that.

WKSA has not carried its summary judgment burden to present evidence supporting the elements of its claims. Su and Pak's motions should be granted on the trade secret misappropriation claims.

### ii. *Cybersquatting: Count IV*

WKSA's cybersquatting claims are against only Paul. The court has recommended separately that WKSA's claims against Paul be dismissed without prejudice for lack of personal jurisdiction. ECF No. 138. The court therefore need not address the cybersquatting claims here.

### iii. *Civil Conspiracy and Tortious Interference with Contract: Counts VII and IX*

In its response, WKSA addresses claims for civil conspiracy and tortious interference with an existing contract together. ECF No. 118 at 5. WKSA does not cite the elements of either cause of action or discuss how the court should apply the law to the facts of the case. WKSA's theory is that Paul, Pak, and Su are acting together to harm WKSA by: registering domain names using WKSA's trademarks, publishing the aforementioned textbook, filing actions in court to challenge their intellectual property rights, and publishing derogatory allegations in this lawsuit against KSWA. *Id.* at 3. The evidence WKSA provides in support of these claims is, again, the Roper Declaration (without any pinpoint citations), several excerpts from Su's, Pak's, and Paul's depositions, and a document that was attached to Pak's reply brief in support of his motion to dismiss, ECF No. 96 at 14. The document is a declaration alleging rape against an individual who is not a party to this suit.

The elements of civil conspiracy are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt

acts; and (5) damages as the proximate result." *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019) (quoting *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)). Civil conspiracy is a derivative tort that "depends on some underlying tort or other illegal act. *Agar Corp. v. Electro Circs. Int'l, LLC*, 580 S.W.3d 136, 140–41 (Tex. 2019).

Given that WKSA has argued "Conspiracy and Tortious Interference" in a single heading together, ECF No. 118 at 2, the court understands WKSA to be arguing that its civil conspiracy claim is derivative of its tortious interference with contract claim. The court observes that WKSA's counterclaim and third-party complaint bases its civil conspiracy cause of action on misappropriation of trade secrets, breach of fiduciary duties by Su and Pak, unjust enrichment, trademark and copyright infringement, and tortious interference with WKSA's contractual relationships with its franchisees and unidentified third parties. ECF No. 87 at 26–27. The court has recommended dismissal of most of the foregoing claims, except trademark infringement, which the court found should proceed to trial only as to Su, not Pak. There has been no showing that Pak had a meeting of the minds with Su with respect to damaging WKSA by infringing their trademarks, as discussed above. WKSA has not made any arguments about unjust enrichment or breach of fiduciary duty. Thus, all that is left to support a civil conspiracy claim is tortious interference with contract, which the court discusses next.

The elements for tortious interference with an existing contract are: "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Fin. Review Services, Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

WKSA argues that Su and Pak engaged in all manner of unlawful conduct meant to harm WKSA. ECF No. 118 at 5. WKSA states that Su made "a defamatory allegation of rape in the 1990's in the UK," *id.*, and that Pak attached that allegation to a pleading and dispersed the allegation to the WKSA community via email. WKSA assumes that the email list "can only have been garnered by using KSW's trade secrets." *Id.* It is unclear to the court how these allegations constitute conspiracy to tortiously interfere with an existing contract. WKSA fails to provide evidence showing any existing contract that Su or Pak willfully interfered with, which caused WKSA injury. WKSA does not say who it contracted with, when or on what terms. WKSA does not say how any of Su or Pak's conduct had an impact on any contract. Again, WKSA has failed entirely to articulate how its evidence supports its claims, and, thus, WKSA has failed to meet its burden as the nonmoving party to demonstrate the existence of a material fact issue. WKSA's claims for civil conspiracy and tortious interference fail as a matter of law, and Su and Pak's motions should be granted for these claims.

### iv.  *Breach of Contract: Count VIII*

WKSA brings a claim for breach of contract against Su and Pak. The elements for breach of contract are: (1) a valid contract, (2) performance by plaintiff, (3) breach of the contract by defendant, and (4) damages to the plaintiff resulting from defendant's breach. *Williams v. Wells Fargo Bank, N.A.*, 884 F.3d 239, 244 (5th Cir. 2018).

#### a.  *Su's Breach*

WKSA argues that Su's creation of the *Kuk Sool Won Textbook Volume 5* "is a breach of the duty of loyalty, and thus a breach of contract." ECF No. 118 at 7. WKSA does not present evidence of any contract requiring a duty of loyalty. Thus, there can be no breach of contract based on any lack of loyalty. WKSA is

conflating the breach of the duty of loyalty with breach of contract. The duty of loyalty is a fiduciary duty, and employees are generally not fiduciaries of their employers simply by virtue of the employment relationship. *D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 216 (5th Cir. 2018). Employees can sometimes owe their employers certain limited fiduciary duties, *see id.*, but a claim for breach of fiduciary duty is different from a claim of breach of contract, which is the cause of action WKSA alleged against Su. ECF No. 87 at 27–29.

In any event, WKSA states that Su was employed by WKSA, and during that time, Su drafted "Volume 5" of a WKSA textbook. ECF No. 118 at 7. Su then lied about creating the book and told In-Hyuk Suh that he was not working on the book. *Id.* Su also told others that he would be fired when WKSA learned that he made it. ECF No. 118 at 7. Even if true, these facts fail to create a material fact dispute for breach of contract. WKSA does not provide any specific contractual provision that Su breached by creating the textbook. Accordingly, because WKSA has failed to show the existence of a contract or its breach, its claim for breach of contract against Su fails.

### b. Pak's Breach

WKSA states in its response that its claim for breach of contract against Pak "is even more explicit" than that against Su. ECF No. 118 at 7. WKSA states that Pak "entered into a personal guarantee as a school owner that he would not compete with KSW." *Id.* WKSA states that Pak is competing with it, and thus, has breached his agreement. *Id.* The only evidence that WKSA offers to support its claim against Pak is, yet again, the Roper Declaration.

Pak, proceeding pro se, argues that WKSA has failed to provide the contractual language at issue, and that WKSA has provided no evidence of damages. ECF No. 104-1 at 7–8. In his

reply, Pak argues that any restrictive covenants that the franchise agreement might contain are unenforceable. ECF No. 122 at 11–12.

WKSA's presentation of its argument supporting its claim for breach of contract against Pak is incomplete. WKSA did not supply the court with the contracts it entered into with Pak. Nor does WKSA supply the court with the contractual language that governs the parties' relationship. All the court has for WKSA's claim against Pak is the Roper Declaration. The Roper Declaration states that Pak entered a franchise agreement with WKSA and "executed a Confidentiality and Non-Competition Agreement . . . which prohibited Pak from using any confidential information belonging to WKSA except as permitted under the Franchise Agreement, and which prohibited Pak from competing with WKSA in the martial arts industry in the event the Franchise Agreement was terminated." ECF No. 118-1 at p. 7 ¶ 15. This broad assertion fails to provide the terms of the agreement or to show that it is enforceable.

In Texas, a covenant not to compete is enforceable if (1) there is an otherwise enforceable agreement, (2) the covenant not to compete is ancillary to or part of that agreement, and (3) it is enforceable to the extent that it "contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary." Tex. Bus. & Com. Code Ann. § 15.50; *Guy Carpenter & Co., Inc. v. Provenzale*, 334 F.3d 459, 464–65 (5th Cir. 2003). WKSA has provided no evidence of the specific terms of the agreement or any evidence supporting the requirements for a valid covenant not to compete. WKSA has thus failed to show that it has a claim for breach of the agreement not to compete.

Even if WKSA's evidence supported the existence of a valid non-compete agreement that Pak breached, WKSA has not

provided the court with any evidence that it suffered damages resulting from Pak's alleged breach. *See* ECF No. 118 at 7. The Roper Declaration makes the conclusory statement that "Pak recruited other franchisees of [WKSA] to Su's competing martial arts organization, relying on information they learned from [WKSA]." ECF No. 118-1 at p. 7 ¶ 16. The evidence shows that Pak sent messages via a messenger app, which do not appear to use WKSA's allegedly confidential emails, soliciting business for Su's new organization. *See* ECF No. 118-1 at 13. The exhibits do not show who the messages are to, and WKSA fails to show that that anyone that Pak contacted left WKSA or that it was otherwise injured by Pak's alleged breach.

Thus, WKSA has failed to meet its burden to articulate how its evidence supports its claims for breach of contract. WKSA's breach of contract claim fails, and Su and Pak's motions should be granted on this claim.

### B. WKSA's Motion for Summary Judgment on Su's Claims

Su brought eight claims against WKSA: breach of contract, promissory estoppel, wrongful termination, unjust enrichment, defamation, breach of the right of publicity, unfair competition, and intentional infliction of emotional distress. ECF No. 55. WKSA seeks summary judgment on all Su's claims against it. ECF No. 109 at 1.

In his response, Su relies heavily on statements in his Second Amended Verified Complaint as evidence to support his claims. *See, e.g.*, ECF No. 117 at 3. "A plaintiff's verified complaint can be considered as summary judgment evidence to the extent that it comports with the requirements of Fed. R. Civ. P. 56(e)." *King v. Dogan*, 31 F.3d 344 (5th Cir. 1994) (citing *Barker v. Norman*, 651 F.2d 1107, 1114–15 (5th Cir. 1981)). Su signed the Second Amended Verified Complaint and declared under penalty

of perjury that its contents are true and correct to the best of his knowledge and belief. ECF No. 55 at 27. WKSA did not file a reply and there are no objections to Su's evidence. The court considers Su's Second Amended Verified Complaint in the following analysis.

### i. *Breach of Contract*

Su alleges that WKSA formed an oral contract with Su that gave him "an unconditional lifetime appointment to be the 'next generation' . . . of [WKSA's] businesses" and "an equitable share of all assets including real estate." ECF No. 55 ¶¶ 56–57. Su alleges that he performed his duties under the agreement, but WKSA breached when it terminated Su's employment. *Id.* ¶ 58–59.

In its summary judgment motion, WKSA denies the existence of a valid lifetime appointment contract. ECF No. 109 at 6. WKSA argues that Su signed a written agreement setting his salary, which did not modify his at-will employment status. WKSA also argues that even if there were an oral agreement for lifetime appointment, it would not be enforceable because it is not in writing as required by the Texas Statute of Frauds. *Id.* at 7. Su responds by arguing that the Statute of Frauds does not apply, and even if the Statute of Frauds does apply, he meets the partial performance exception, and his agreement should thus be enforced. ECF No. 117 at 4.

The elements for breach of contract are: (1) a valid contract, (2) performance by plaintiff, (3) breach of the contract by defendant, and (4) damages to the plaintiff resulting from defendant's breach. *Williams,* 884 F.3d at 244.

Under the Statute of Frauds, an agreement that "is not to be performed within one year" of the date on which it was made is not enforceable unless it is in writing and signed by the person committed to perform or by someone authorized to sign for that person. Tex. Bus. & Com. Code Ann. § 26.01. The party pleading

the Statute of Frauds bears the initial burden of establishing its applicability. *Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 641–42 (Tex. 2013). If the pleading party meets its burden, the burden shifts to the opposing party to establish an exception that would take the verbal contract out of the Statute of Frauds. *Id.*

To establish that the Statute of Frauds applies, WKSA argues that Texas courts consistently apply the Statute of Frauds to employment agreements that are intended to last until the employee retires. ECF No. 9 at 8–9 (citing cases). Under Texas law, oral promises of permanent or lifetime employment are barred by the Statute of Frauds. *Zimmerman v. H.E. Butt Grocery Co.*, 932 F.2d 469, 472–73 (5th Cir. 1991); *Massey v. Houston Baptist Univ.*, 902 S.W.2d 81, 84 (Tex. App.—Houston [1st Dist.] 1995, writ denied). WKSA met its initial burden to show that the Statute of Frauds applies to agreements for lifetime employment.

Su argues in response that the "partial performance" exception to the Statute of Frauds applies because he substantially performed. ECF No. 117 at 4. "Under the partial performance exception to the Statute of Frauds, contracts that have been partly performed, but do not meet the requirements of the Statute of Frauds, may be enforced in equity if denial of enforcement would amount to a virtual fraud." *Yee v. Anji Techs., LLC*, No. 05-18-00662-CV, 2019 WL 2120290, at *7 (Tex. App.—Dallas May 15, 2019, no pet.) (quoting *Berryman's S. Fork, Inc. v. J. Baxter Brinkmann Int'l Corp.*, 418 S.W.3d 172, 192 (Tex. App.—Dallas 2013, pet. denied)). The partial performance that a party relies on to meet the exception must be unequivocally referable to the oral agreement "such as could have been done with no other design than to fulfill the particular agreement sought to be enforced." *Id.* (quoting *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 439–40 (Tex. App.—Dallas 2002, pet. denied)). Otherwise, "[i]f the evidence establishes that the party [who partially performed]

could have done so for some reason other than to fulfill obligations under the oral contract, the exception is unavailable." *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 426–27 (Tex. 2015) (per curiam).

WKSA's motion states that Su "signed a document that set his salary." ECF No. 109 at 6. To support this argument, WKSA cites to "Su Exh. 1, 2." *Id.* These documents are written in Korean, and an English translation is provided.[4] ECF No. 109-1 at 140, 146. Exhibit 2 (ECF No. 109-1 at 145–48) is an agreement, signed by Su on January 24, 2007, wherein Su agrees to receive a monthly salary of $2,500. *Id.* at 146. Su also agrees to five specific terms in the agreement: (1) managing and reporting results of San Francisco regional belt tests, (2) attending WKSA competitions, (3) attending seminars, (4) attending foreign business trips, and (5) promoting "harmony among the brothers and remain[ing] dedicated to the affairs of [WKSA]." ECF No. 109-1 at 146.

This agreement appears to be an employment agreement. It does not provide for Su to eventually inherit WKSA or its assets; nor does it provide for a "lifetime appointment." Because Su entered into an agreement to work for WKSA in exchange for pay, his performance of that work cannot be characterized as "unequivocally referrable" to the alleged oral agreement or having been done "with no other design" than to fulfil the alleged oral agreement. *Yee, LLC*, 2019 WL 2120290, at *7. As such, the partial performance exception is unavailable, and the Statute of Frauds applies. *Nat'l Prop. Holdings*, 453 S.W.3d at 426–27; *see also Sullivan v Leor Energy, LLC*, 600 F.3d 542, 548 (5th Cir. 2010) (holding that payment of salary in exchange for services is insufficient to show partial performance because the services are

---

[4] The translator declared that they are a registered court interpreter, and a notary certified the interpreter's declaration. *Id.* at 143–44, 147–48.

fully explained by the salary without supposing any additional consideration).

The court also notes that the partial performance exception to the Statute of Frauds applies only if denial of performance would amount to a "virtual fraud." *Sullivan*, 600 F.3d at 459. That requires the proponent of the exception to show 1) strong evidence establishing the existence of an agreement and its terms; 2) that the party acting in reliance on the agreement suffered a substantial detriment for which he has no adequate remedy; and 3) that the other party would reap an unearned benefit. *Id.* Su does not come close to showing any of these things. Su does not describe the specific terms and conditions of the promises that were allegedly made to him. At best, it appears that the parties had high hopes for Su and that he would one day be the head of the company. There is no evidence about what the specific terms and conditions of the alleged promises were. Moreover, it appears that Su was paid for his services, and Su has presented no evidence of any benefit WKSA has obtained for which it has not paid. Su has not carried his burden to show that the partial performance exception to the Statute of Frauds applies.

It is unclear to the court whether WKSA argues that the Statute of Frauds also bars Su's claim for breach of the agreement to provide him with an equitable share of all assets, including property. Neither party has clearly briefed the issue. In any event, this claim fails on the merits.

Su's allegation is that WKSA "promised an equitable share of all assets, including specific real estate." Su's Resp. to WKSA's M. Summ. J., ECF No. 117 at 3. Taking Su's broad statement as true, and even if the Statute of Frauds does not bar this theory of recovery, Su has not described the specific details of the contract to allow the court to understand how WKSA breached it. For example, Su fails to allege an enforceable contract with an offer,

acceptance, and consideration; he does not state when WKSA was required to convey the property interest or what share he agreed to receive; he leaves out how WKSA's termination of his employment is a breach of the alleged agreement to convey property to him. Su has not provided any evidence about the extent of his "equitable interest" under the agreement or his damages for the alleged breach. In fact, because the time for conveyance of the property interest is not specified, it is not even clear that there has yet been a breach.

Because the Statute of Frauds applies and there is no applicable exception to Su's employment-based claims, and because Su has failed to show evidence supporting his claim for WKSA's failure to convey property interests to him, WKSA's motion for summary judgment should be granted for Su's breach of contract claim.

### ii. *Promissory Estoppel*

If a promisee detrimentally relies on an otherwise unenforceable promise, and if injustice can be avoided only by enforcement of the promise, the promisee may have a claim for relief under promissory estoppel. *MetroplexCore, L.L.C. v. Parsons Transp., Inc.*, 743 F.3d 964, 977 (5th Cir. 2014). To state a claim for promissory estoppel in Texas, a plaintiff must show: "(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *Id.* (quoting *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)). "[W]hen promissory estoppel is used to enforce a promise that would be unenforceable because of the statute of frauds, the promise must be a promise to sign an already existing written agreement that would itself satisfy the requirements of the statute of frauds." *Ellen v. F.H. Partners, LLC*, No. 03-09-00310-CV, 2010 WL 4909973, at *4 (Tex. App.—Austin Dec. 1, 2010, no pet.) (citing *Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex. 1982)).

30

Here, Su argues that WKSA promised Su a lifetime appointment, that he would be the next generation of WKSA, and an equitable share in all WKSA's assets, including real estate. Su's Resp. to WKSA's M. Summ. J., ECF No. 117 at 6. Where the Statute of Frauds bars enforcement of a contract, it also bars claims for promissory estoppel unless the promise seeking to be enforced is a promise to sign a written agreement. *See Ellen*, 2010 WL 4909973, at *4. There is no evidence that such an unsigned written agreement exists. Accordingly, Su cannot recover based on alleged promises of lifetime appointment and that he would be the "next generation" of WKSA because those claims are barred by the Statute of Frauds. Moreover, because it appears that Su agreed to perform services in exchange for pay, Su has failed to present evidence that he relied on any promise to his detriment.

As to the promise to convey real property, there are two problems. First, the court does not have any evidence of the details of any promises made. The court has only a single sentence in Su's Second Amended Verified Complaint that In-Hyuk Suh "promised Plaintiff an ownership interest in all assets of Defendants, including [certain real property in Texas.]" ECF No. 55 ¶ 18. As discussed above, the court does not know, for example, when the interest was to be transferred, what the nature of the interest was to be, or how it was to be conveyed.

Second, Su does not provide any evidence that he reasonably and foreseeably relied on the promise to convey a property interest to him. Su states that he practiced Korean-style martial arts and declined other opportunities based on the "unconditional promise" of leading WKSA someday. ECF No. 55 ¶ 19. Su does not present any evidence to show that his continued practice of martial arts was in any way connected to or in reliance on the promise that he would inherit real property. Again, the universe of evidence cited before the court is Su's isolated statements in his Second Amended

Verified Complaint. This is insufficient to create a fact issue regarding his property-related promise.

Because Su has failed to provide evidence supporting his promissory estoppel claim, WKSA's motion on this claim should be granted.

### iii. Wrongful Termination

Su alleges wrongful termination based on two theories of recovery.

First, Su alleges wrongful termination under the Texas Commission on Human Rights Act (TCHRA) based on "retaliation for complaining about [WKSA's] suspected illegal or unethical activity in violation of . . . Texas Labor Code § 21.051." ECF No. 55 ¶¶ 70–74. An employer commits an unlawful employment practice under this statute if it discharges an employee based on the employee's race, color, disability, religion, sex, national origin, or age. Tex. Lab. Code § 21.051. An aggrieved person with a claim under the TCHRA must file a complaint with the Texas Workforce Commission (TWC) within 180 days of the date of the alleged unlawful conduct. Tex. Lab. Code §§ 21.202(a), 21.201.

WKSA argues that Su's claim for wrongful termination under the TCHRA fails because Su does not allege membership in a protected class under the statute and because Su does not meet the statute's pre-suit administrative exhaustion requirements. WKSA's M. Summ. J., ECF No. 109 at 10. Su has not alleged or provided evidence that he was terminated because of his membership in any protected class under the TCHRA. To the extent that Su has a recognizable claim for retaliation under the TCHRA, Su has not provided any evidence that he exhausted his administrative remedies by filing a complaint with the TWC. Thus, his claim under the TCHRA fails.

Second, Su bases his claim for wrongful termination on WKSA's alleged retaliation for Su reporting WKSA's illegal or

unethical activity. ECF No. 55 ¶ 72. WKSA argues that Texas does not provide general protection for private-sector whistleblowers, and Su's characterization of retaliation based on whistleblowing accordingly fails. ECF No. 109 at 10–11.

The Texas Supreme Court has considered and explicitly declined to recognize a cause of action for private employees who are discharged for reporting illegal activities. *Winters v. Houston Chronicle Pub. Co.*, 795 S.W.2d 723, 724–25 (Tex. 1990) (declining to expand the exception it recognized in *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985) (allowing a cause of action for wrongful termination where an employee declined to perform an illegal act)). Thus, to the extent that Su claims wrongful termination based on retaliation for reporting illegal activities, that claim fails as a matter of law.

Third, Su argues in his response that, even though Texas "adheres to the at-will employment doctrine, the facts of this case strongly support an exception based on fraudulent inducement." ECF No. 117 at 7. Su argues that his sudden termination after decades of promises for future employment "strongly suggests that the Defendants never intended to fulfill their promises." ECF No. 117 at 8. The evidence does not support this argument. Fraudulent inducement requires evidence that the promises, if any, were false when made. *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 277 (5th Cir. 2012). There is no evidence of that. Su worked for WKSA for decades. All the evidence points to a sudden falling out. In any event, Su fails to show how fraudulent inducement allows him to make a claim for wrongful termination and Su fails to show how his evidence supports a claim for wrongful termination on its face. WKSA's motion should be granted on Su's wrongful termination claim.

### iv. Unjust Enrichment

Su alleges that WKSA was unjustly enriched because WKSA incorrectly classified him as an independent contractor, and thus, did not give Su benefits like health insurance, retirement contributions, or paid leave. ECF No. 55 ¶¶ 77–81. Su also alleges that he paid increased taxes because of his misclassification. *Id.*

Unjust enrichment occurs when someone secures a benefit wrongfully or passively receives a benefit that would be unconscionable to retain. *Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 111 (Tex. App.—Houston [1st Dist.] 2013, no pet.). To successfully assert a claim for unjust enrichment, a party must allege that "one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

The Texas Supreme Court has explained that unjust enrichment claims are based on quasi-contract, or a legal obligation "to do justice even though it is clear that no promise was ever made or intended." *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683–84 (Tex. 2000). Generally, because unjust enrichment claims are based on a quasi-contract theory, when a valid, express contract covers the subject matter of the dispute, a party cannot recover for unjust enrichment. *Id.* at 684. That is because recovery under an equitable theory, like unjust enrichment, is generally inconsistent with the express agreement. *Id.*

As discussed above, WKSA provided evidence of an agreement between WKSA and Su that set the terms of Su's payment and his performance obligations in return. *See* ECF No. 109-1 at 146. Su does not argue that this agreement is invalid. Su argues that his unjust enrichment claim "is not necessarily precluded" and the fact that he was an at-will employee does not foreclose the possibility that WKSA was unjustly enriched by Su's

performance. Su's Resp. to WKSA's M. Summ. J., ECF No. 117 at 9–10. Even viewing the evidence in the light most favorable to Su, he had an express agreement with WKSA about his payment and performance expectations. Because the terms of Su's payment and employment were set in an express contract, Su cannot recover under unjust enrichment. Su has also not shown WKSA received a benefit through fraud, duress, or by taking undue advantage. Thus, WKSA's motion should be granted for this claim.

### v. *Intentional Infliction of Emotional Distress (IIED)*

Su brings a claim for IIED and alleges that WKSA engaged in extreme and outrageous conduct by publicly terminating and ridiculing him. ECF No. 55 ¶¶ 111–19.

To state a claim for IIED under Texas law, a plaintiff "must demonstrate that the defendant intentionally or recklessly engaged in extreme or outrageous conduct that resulted in severe emotional distress." *Stelly v. Duriso*, 982 F.3d 403, 407–08 (5th Cir. 2020) (citing *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 66 (Tex. 1998)). The plaintiff must also demonstrate that there is no alternative cause of action available to redress the alleged misconduct. *Id.* at 408 (citing *Hoffman-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004)). That is because "IIED is a 'gap-filler' tort reserved for 'those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress.'" *Id.* (quoting *Hoffman-La Roche*, 144 S.W.3d at 447).

WKSA argues that Su's claim fails as a matter of law because termination of an at-will employee and ordinary employment disputes do not rise to the level of conduct required to state a claim for IIED. ECF No. 109 at 11–12.

To be extreme and outrageous, conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 606 (Tex. 1999) (citing *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994)). Texas has a strict approach to IIED claims that arise in the workplace—ordinary employment disputes do not meet this high standard. *Id.* at 612–13. A plaintiff in an employment dispute must show conduct that brings the dispute outside the scope of an ordinary employment dispute and into the realm of extreme and outrageous conduct, which exists only in the most unusual circumstances. *Id.* at 613.

Su argues that WKSA "engaged in a pattern of abusive conduct, including publicly humiliating the plaintiff and ultimately terminating him without cause after decades of service." Su's Resp. to WKSA's M. Summ. J., ECF No 117 at 12. According to Su, "the special relationship between the Grandmaster, In Hyuk Suh, and his first-born son, Plaintiff, creates a context in which the alleged conduct could be considered particularly egregious." ECF No. 117 at 12–13. Su is not clear about what specific conduct is the basis for his IIED claim. For example, he alleges a pattern of abuse but does not explain how WKSA allegedly abused him. The evidence Su provides does not show abuse or any unusual facts about his termination that would bring it outside the scope of a typical employment dispute.

Su does not say, but rather implies, that the letter from WKSA to its masters and schools, ECF No. 55-3 at 4–5, constitutes egregious conduct. While the letter may be unpleasant for Su, Su has failed to demonstrate that it was outrageous or extreme. *See* ECF No. 55-3 at 4–5 (informing WKSA's members of "the ongoing civil dispute," stating that Su is "spreading lies," and urging its members to "be the calm, rational, and non-emotional party"). Su

has not provided the court with any evidence of extreme or outrageous conduct that meets the threshold to state a claim for IIED in Texas. Accordingly, WKSA's motion should be granted for the IIED claim.

### vi. *Right of Publicity*

The "right of publicity" refers to the tort of misappropriation of one's name or likeness. *Henley v. Dillard Dep't Stores*, 46 F. Supp. 2d 587, 590 (N.D. Tex. 1999). This cause of action is based on the idea that anyone who, for their own benefit, uses the name or likeness of another is subject to liability for the invasion of the other's privacy. *Id.* To state a claim for this type of misappropriation, the plaintiff must show "(i) that the defendant appropriated the plaintiff's name or likeness for the value associated with it, and not in an incidental manner or for a newsworthy purpose; (ii) that the plaintiff can be identified from the publication; and (iii) that there was some advantage or benefit to the defendant." *Matthews v. Wozencraft*, 15 F.3d 432, 437 (5th Cir. 1994).

In his Second Amended Verified Complaint, Su states that WKSA wrongfully continued to use Su's identity and image for commercial purposes after his termination. ECF No. 55 ¶¶ 89–96. Su states that the value associated with using his name and likeness was cultivated over years, and the respect he earned as "a highly skilled martial artist helped greatly enrich" WKSA's business. *Id.* ¶ 20.

WKSA does not argue that Su lacks evidence on any element of his claim. Rather, WKSA argues that Su's claim fails because Su does not have a right to privacy for photos taken during his employment. WKSA's M. Summ. J., ECF No. 109 at 12–13. WKSA cites *Carter v. Diamond URS Huntsville, LLC*, 175 F. Supp. 3d 711, 726 (S.D. Tex. 2016) for the proposition that "[a]n employer has the right to use employee images for business purposes." ECF

No. 109 at 13. But that case says no such thing. *See Carter,* 175 F. Supp. 3d at 726 ("[This case is] grounded in 42 U.S.C. § 1983 and the Fourth Amendment . . . [it alleges] excessive force and unreasonable search and seizure, in addition to assault and battery and false imprisonment"). The case is about excessive use of force and unreasonable search and seizure. *Id.* There is no mention of the right of publicity.

The court's own research has not found any support for WKSA's legal position. In a recent case about an employer's alleged misappropriation of its employee's name after she was no longer an employee, the court did not address whether an employer has a right to use its employee's name or likeness. *See Guijarro v. Charles P. Johnson, Inc.,* No. 13-19-00268-CV, 2021 WL 1133614, at *3–4 (Tex. App.—Corpus Christi–Edinburg Mar. 25, 2021, pet. denied). Instead, the court discussed the employee's prior *consent* to use her name. *Id.*

WKSA also argues that there is no ongoing use of Su's likeness because it removed Su's image from its materials. WKSA's M. Summ. J., ECF No. 109 at 13. WKSA provides deposition testimony from Hilda Roper that WKSA no longer uses Su's photo or likeness in any textbooks, pamphlets, and other material. ECF No. 109-4 331:20–332:9. But there is a material fact dispute about whether WKSA removed all references to Su. Su states that WKSA "continued to use [Su's] name, image, and likeness in [its] promotional materials, websites, and social media accounts even after his termination." ECF No. 117 at 14. Su provides evidence of this continued use in WKSA's "Franchise Disclosure Agreement." ECF No 117-1 at 25. The document, dated March 1, 2024, states that WKSA's "training seminars are overseen by Grandmaster In Hyuk Suh, Master ***Sung Jin Suh***, Master Alex Suh and Master Barry Harmon. . . . Master ***Sung Jin Suh*** is a Certified 9th Degree Black Belt and has been teaching seminars since 1991. He has

been our Vice President since August 2007." *Id.* at 4, 25 (emphasis added). Thus, apart from images obtained when he was an employee, WKSA appears to be using Su's name and notoriety to profit.

Because there is a material fact issue about the continued use of Su's name or likeness, and because Su has provided evidence to support the elements of his claim, WKSA's motion should be denied on Su's right of publicity claim.

### vii.  Unfair Competition

A Texas common law claim for unfair competition is an umbrella claim "for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters." *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000). To make a claim for unfair competition, the plaintiff must show an independent tort or otherwise illegal act by the defendant that interfered with the plaintiff's ability to conduct its business. *Id.*

WKSA argues that Su has not alleged any independent illegal act that would support an unfair competition claim. WKSA's M. Summ. J., ECF No. 109 at 13–14. WKSA also argues that Su has not demonstrated how any alleged acts by WKSA interfered with Su's ability to do business.

Su argues that he has established underlying tortious activity by WKSA and that he has been harmed by WKSA's conduct. Su's Resp. to WKSA's M. Summ. J., ECF No. 117 at 18. Su fails to provide any evidence supporting his claim that WKSA's actions interfered with his ability to conduct business. The only evidence Su provides in his response is one paragraph in his Second Amended Verified Complaint, which states that WKSA has

publicly stated that it has millions of active members.[5] *Id.*; ECF No. 55 ¶ 101 (citing Exhibit D, ECF No. 55-2 at 1–8). Su has not met his burden to identify specific evidence in the record that creates a fact issue about whether WKSA's actions interfered with Su's ability to do business. Accordingly, WKSA's motion should be granted on Su's unfair competition claim.

### viii. Defamation

"[T]he threshold requirement for [defamation] is the publication of a false statement of fact to a third party." *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 623 (Tex. 2018). Defamation may occur through slander, which is the spoken expression of a defamatory statement, or libel, which is a written or other graphic form of defamatory statement. *Id.* at 623–24. To state a claim for defamation, a plaintiff must show "(1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, at least amounting to negligence, and (4) damages, in some cases." *Klocke v. Watson*, No. 22-10348, 2023 WL 2823060, at *5 (5th Cir. Apr. 7, 2023). A statement is defamatory if it harms the reputation of another "as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 417 (Tex. 2020). If a statement is not verifiable as false, it is not defamatory. *Dallas Morning News*, 554 S.W.3d at 624.

---

[5] Su's Second Amended Verified Complaint also contains the conclusory statement, which Su did not provide in his response, that "[a]s a result of [WKSA's] unfair, deceptive, and fraudulent acts or practices, [Su] has lost sales of [his] own[.]" ECF No. 55 ¶ 106. This is overly broad and conclusory and does not connect any act by WKSA to any specific interference with Su's ability to conduct business. Su does not include evidence by an expert, any market analysis, or other relevant evidence showing this element of his claim. As such, Su's statement is insufficient to create a fact issue about whether WKSA interfered with Su's ability to conduct business.

A statement is defamation per se if it injures a person in his office, profession, or occupation. *Hancock v. Variyam*, 400 S.W.3d 59, 66 (Tex. 2013). "Disparagement of a general character, equally discreditable to all persons, is not enough unless the particular quality disparaged is of such a character that it is peculiarly valuable in the plaintiff's business or profession." *Id.* at 67.

Su states in his Second Amended Verified Complaint that WKSA, through Alex Suh, "stated falsely in front of a large audience of masters and school owners that [Su's] 'way of doing martial arts was wrong,' that [Su] did not make himself available for WKSA-hosted events, that he was 'disrespectful,' a 'betrayer' and 'did not bow' to In Hyuk Suh[.]" ECF No. 55 ¶ 83. Su also states that WKSA published these statements to the broader Korean martial arts community, which harmed Su's reputation. *Id.* ¶ 84. Additionally, Su states that an individual, Mr. Gause, tells those in the Korean martial arts community and posts online allegedly defamatory statements about Su including that Su is a "damn liar and con," "lowlife," "pissy little bitch," and "rip-off artist," among others. *Id.* ¶ 85.

WKSA seeks summary judgment in reliance on the Texas Defamation Mitigation Act, which provides that "[a] person may maintain an action for defamation only if: (1) the person has made a timely and sufficient request for a correction, clarification, or retraction from the defendant; or (2) the defendant has made a correction, clarification, or retraction." Tex. Civ. Prac. & Rem. Code Ann. § 73.055(a). WKSA argues that, because Su has not met this threshold request requirement, his defamation claim fails as a matter of law. ECF No. 109 at 14–15. This argument fails.

A plurality of the Texas Supreme Court recently held that "[t]he plain language of the statute does not support a right to dismissal for failing to provide a sufficient request before the statute of limitations expires." *Hogan v. Zoanni*, 627 S.W.3d 163,

176–77 (Tex. 2021). The appropriate remedy for failure to timely provide a sufficient request is not dismissal, but loss of exemplary damages. *Id.* at 165 ("the DMA prescribes the abatement of claims and loss of exemplary damages, rather than dismissal"); *see also Berrios v. Cox,* No. EP-23-CV-63-KC, 2024 WL 89453, at *5 (W.D. Tex. Jan. 8, 2024), *reconsideration denied,* No. EP-23-CV-63-KC, 2024 WL 3223687 (W.D. Tex. Feb. 6, 2024) ("the *Hogan* plurality reiterated what most state and federal courts to consider the issue had already concluded: Failure to comply with the DMA's request requirement does not require dismissal.").

Because the failure to request a retraction is not sufficient cause to dismiss Su's claim, the court considers WKSA's next argument: that Su's defamation claims are based on postings that are not attributable to WKSA. In response, Su provides three exhibits on which he bases his defamation claim. Two of these exhibits, Exhibits K and L, appear to be letters on WKSA letterhead from WKSA to WKSA masters and school owners. ECF No. 55-3 at 1–5. The third, Exhibit M, appears to be a letter from Alex Suh to WKSA school owners. ECF No. 55-3 at 6–7. It is unclear to the court how letters that are apparently published by WKSA are not attributable to WKSA. In the absence of any clarifying arguments by WKSA, the court proceeds as if any allegedly defamatory statements in the letters from WKSA can be attributed to WKSA.

WKSA argues that "the communications are not defamatory on their face." WKSA's M. Summ. J., ECF No. 109 at 14. In response, Su states that WKSA's statements are defamatory per se because they injure him in his profession or occupation. Su's Resp. to WKSA's M. Summ. J., ECF No. 117 at 19. Su provides evidence that WKSA stated that Su "has not made himself available for the various events hosted by the WKSA" and that Su has chosen to "disregard and ignore [] orders and directives, and

continues to work against the best interests of the WKSA." ECF No. 55-3 at 2. Su argues that this suggests a dereliction of duty. ECF No. 117 at 19. Su also argues that "Exhibits L and M contain statements insinuating that Plaintiff acted against the interests of the organization." *Id.* Su does not provide any specific statements in Exhibit M that he alleges to be defamatory.

Su has not shown that any statements in these exhibits are defamatory or provably false, made with any degree of fault or negligence, or that the general disparagements of character are particularly valuable in his field. *See Hancock,* 400 S.W.3d at 67 ("the proper inquiry is whether a defamatory statement accuses a professional of lacking a peculiar or unique skill that is necessary for the proper conduct of the profession"). It is Su's burden to show how the statements are false and defamatory. The court cannot perform that analysis by reference only to the statements themselves. As such, Su has not carried his burden to show defamation per se based on the letters in Exhibits K, L, or M.

In addition to the letters, Su provides evidence of social media posts that "directly attack Plaintiff's character and professional reputation, including accusations of unethical behavior and incompetence," which, when viewed in context, "clearly injure Plaintiff in his profession and impute dishonesty or questionable business practices to him." Su's Resp. to WKSA's M. Summ. J., ECF No. 117 at 19. Su has not met his burden to show that the social media posts are defamatory. Su provides several pages of screenshots from social media, but the statements contained within the posts generally state that "people" are making up false ways of practicing Kuk Sool, ECF No. 55-3 at 12–14, and that "every organization and association has unethical people that are often purged," *id.* at 14. The posts may allude to Su, without naming him, but they do not appear to state provably false statements, nor do they appear to be fact. *See Dallas Morning*

*News,* 554 S.W.3d at 639 ("even when a statement is verifiable as false, it does not give rise to liability if the 'entire context in which it was made' discloses that it is merely an opinion masquerading as fact."). Because Su has not explained how these statements are defamatory or provably false, his claim for defamation based on these posts fails.

Su has not met his burden to provide evidence showing a fact issue on his claim for defamation. Thus, WKSA's motion on Su's defamation claim should be granted.

### C. *Su's Motion for Summary Judgment on WKSA's Defenses*

WKSA alleged sixteen defenses in response to Su's claims against it. ECF No. 87 at 30–32. Su now seeks summary judgment on all of WKSA's affirmative defenses. ECF No. 105-1 at 4. Because the court recommends granting WKSA's motion for summary judgment on nearly all of Su's claims, most, if not all, of WKSA's alleged defenses are moot. The only remaining claim against WKSA is Su's right of publicity claim. The court analyzed WKSA's relevant defenses as necessary in the analysis above. The court need not address those defenses again here. Su's motion for summary judgment on WKSA's defenses should be denied as moot.

### 5. *Conclusion*

For the foregoing reasons, the court recommends that Su's Motion for Summary Judgment, ECF No. 105, be **GRANTED in part and DENIED in part**; Pak's Motion for Summary Judgment, ECF No. 104, be **GRANTED**; Su and Pak's Motions to Dismiss, ECF Nos. 89 and 90, be **DENIED as MOOT**; Su's Motion to Strike, ECF No. 102, be **DENIED as MOOT**; Defendants' Motion for Summary Judgment, ECF No. 109, be **GRANTED in part and DENIED in part**; and Defendants' Motion to Strike Experts, ECF No. 110, and Su's Motion to Exclude Testimony, ECF No. 108, be **DENIED** without prejudice to refiling as motions in

limine before the trial judge. Accordingly, the court recommends that all causes of action be dismissed, except WKSA's claim for trademark infringement against Su, and Su's claim for the violation of his right to publicity against WKSA. Again, the claims against Paul have been addressed separately.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on December 23, 2024.

_____
Peter Bray
United States Magistrate Judge

45